844 F.2d 714
 53 Fair Empl.Prac.Cas. 1232, 105 A.L.R.Fed. 829,
46 Empl. Prac. Dec. P 37,902, 56 USLW 2605
 Alfredo DeVARGAS, Plaintiff-Appellee,
v.
MASON & HANGER-SILAS MASON CO., INC.; T.R. Hook,
Individually and in his official capacity; Don
Hardwick, Individually and in his
official capacity, Defendants-Appellants,
and
John Does, Individually and in their official capacities,
Los Alamos National Laboratory; Richard One Through Two,
Individually and in their official capacities; University
of California; Robert Pogna, Employee Los Alamos National
Laboratory, Defendants.
Alfredo DeVARGAS, Plaintiff-Appellee,
v.
MASON & HANGER-SILAS MASON CO., INC.; T.R. Hook,
Individually and in his official capacity; Don
Hardwick, Individually and in his
official capacity, Defendants-Appellants,
and
the United States Department of Energy; John Does,
Individually and in their official capacities; Los Alamos
National Laboratory; Richard One Through Two, Individually
and in their official capacities; Gary Granere, Acting Area
Manager-Department of Energy Los Alamos Area Office;
University of California; Donald Kerr, Director, Los Alamos
National Laboratory; Ed. C. Walterscheid, Employee Los
Alamos National Laboratory; John S. Herrington; Robert
Pogna, Employee Los Alamos National Laboratory, Defendants.
 Nos. 86-1894, 86-2843.
 United States Court of Appeals,
Tenth Circuit.
 April 7, 1988.
 
 Joseph E. Earnest of Montgomery & Andrews, Santa Fe, N.M. (Laurie A. Vogel of Cherpelis & Associates, Albuquerque, N.M., with him on the briefs), for defendants-appellants.
 Steven G. Farber, Santa Fe, N.M. (Richard Rosenstock, Chama, N.M., and Philip Davis, Albuquerque, N.M., with him on the briefs), for plaintiff-appellee.
 Before LOGAN, MOORE and TACHA, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 Alfredo DeVargas has vision in only one eye. In 1981 and again in 1983 he applied to be a security inspector with defendant Mason & Hanger-Silas Mason Co., Inc. (Mason & Hanger). Mason & Hanger, a private corporation, provides security inspectors for the Los Alamos National Laboratory (LANL) in Los Alamos, New Mexico, pursuant to a subcontract with the Regents of the University of California (Regents). LANL operates under an agreement between the United States Department of Energy (DOE) and Regents. Mason & Hanger, through employee defendants T.R. Hook and Don Hardwick, refused to process DeVargas' application for employment, relying upon a then-applicable DOE regulation, Interim Management Directive No. 6102 Appendix IV (IMD 6102), which provided that "[a] one-eyed individual shall be medically disqualified for security inspector duties." Id. A 6 b (8), II R. Tab 65B-1 at 11.
 
 
 2
 In 1984, DeVargas brought suit under both 42 U.S.C. Sec. 1983 and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 396, 91 S.Ct. 1999, 2004, 29 L.Ed.2d 619 (1971), against private defendants Mason & Hanger, Hook, and Hardwick; DeVargas asserted similar claims against public defendants LANL, DOE, Regents and several of their employees. DeVargas alleged that the refusal to hire him violated his civil rights; he sought damages, injunctive, and declaratory relief. The crux of his claims was that IMD 6102 was either unconstitutional or improperly interpreted by defendants.
 
 
 3
 The district court ruled that the individual government employee defendants were entitled to qualified immunity against DeVargas' claims for monetary damages, and it granted summary judgment in their favor.[1] The district court denied the qualified immunity defense of the private defendants, however, ruling as a matter of law that private parties were not entitled to this defense. The private defendants, relying upon Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), now seek interlocutory review of this denial of qualified immunity.
 
 
 4
 In considering this appeal, we must first address three jurisdictional issues: (1) whether these private parties claiming qualified immunity have a right to interlocutory appeal; (2) whether DeVargas' joinder of a claim for injunctive and declaratory relief prevents this interlocutory appeal; and (3) whether the presence of allegedly disputed material facts relating to the qualified immunity claim prevents the appeal. Because we conclude that we have jurisdiction, we also address the merits, holding that private parties acting in accord with duties imposed by a contract with a governmental body are entitled to raise the defense of qualified immunity, and that the district court should have granted the private defendants qualified immunity in this case.
 
 
 5
 * Although the general rule is that a federal appellate court will not review district court orders before the entire litigation is concluded, see 28 U.S.C. Sec. 1291, this "final judgment" rule has several exceptions. The key exception applicable in this case is the independent collateral order doctrine, pronounced in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). The Supreme Court, in Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), held that the collateral order exception allows an interlocutory appeal of the denial of a defense of qualified immunity when a public official is sued for damages and the relevant facts underlying the qualified immunity defense are undisputed.
 
 
 6
 * The Supreme Court has not addressed qualified immunity defenses raised by private parties; it has addressed only public officials' right to qualified immunity. See Mitchell, 472 U.S. at 511, 105 S.Ct. at 2806 (former U.S. Attorney General); Anderson v. Creighton, --- U.S. ----, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (FBI agent); Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (police officer); Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (White House aides); see also Nixon v. Fitzgerald, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (claim of absolute immunity by former President of the United States). The jurisdictional issue which we address now is not whether private parties may claim qualified immunity; the question is rather, assuming the validity of such a defense, whether a private party has the same right as a government employee to bring an interlocutory appeal from the denial of such a defense. See Segni v. Commercial Office of Spain, 816 F.2d 344, 346 (7th Cir.1987).
 
 
 7
 The case before us is not one in which a private party allegedly conspired with a public official to act outside the official's scope of authority. See Chicago & North Western Transport Co. v. Ulery, 787 F.2d 1239, 1241 & n. 1 (8th Cir.1986) (denying private party right of interlocutory appeal). But see Myers v. Morris, 810 F.2d 1437, 1441 (8th Cir.) (allowing private party to bring interlocutory appeal of denial of qualified immunity in concert with public officials appealing same issue), cert. denied, --- U.S. ----, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). Rather, the private parties are a government contractor and its employees, and their defense to the claim of wrongful conduct is that they were performing the government contract according to its terms. Essentially, they argue, the government made them do it.
 
 
 8
 We hold that private parties acting pursuant to contractual duties may bring interlocutory appeals from the denial of qualified immunity. Cf. Austin Municipal Securities, Inc. v. National Association of Securities Dealers, Inc., 757 F.2d 676, 684-85 & n. 7 (5th Cir.1985) (court had jurisdiction to hear appeal from order denying absolute immunity by registered national securities association which performed regulatory function). The Court's concern in Mitchell with encouraging efficient performance of public duties holds equally true in the situation before us. Forcing such private contractor parties to defend meritless damages actions at trial creates the same distractions from public duties as it does for public employees. Just as qualified individuals may be deterred from public service if they are subjected to the cost and disruption of defending claims to which they are immune, so too might qualified private contractors be deterred from entering into contracts with government bodies. See Mitchell, 472 U.S. at 526, 105 S.Ct. at 2815 (quoting Harlow, 457 U.S. at 816, 102 S.Ct. at 2737).
 
 B
 
 9
 DeVargas sought injunctive and declaratory relief, in addition to damages, from the private defendants. Mitchell expressly left open whether a defendant may immediately appeal the denial of the defense of qualified immunity to damages claims when a claim for injunctive relief remains pending in the trial court and will be tried regardless of the appeal's outcome. 472 U.S. at 519 n. 5. This question has split the courts of appeal. Compare Bever v. Gilbertson, 724 F.2d 1083, 1086-87 (4th Cir.) (not appealable), cert. denied, 469 U.S. 948, 105 S.Ct. 349, 83 L.Ed.2d 285 (1984); Riley v. Wainwright, 810 F.2d 1006, 1007 (11th Cir.1987) (per curiam) (presence of claim for injunctive relief alternative ground for denying appeal) with Scott v. Lacy, 811 F.2d 1153 (7th Cir.1987) (per curiam) (appealable); Kennedy v. City of Cleveland, 797 F.2d 297, 306 (6th Cir.1986) (same), cert. denied, --- U.S. ----, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987); De Abadia v. Izquierdo Mora, 792 F.2d 1187 (1st Cir.1986) (same); Tubbesing v. Arnold, 742 F.2d 401 (8th Cir.1984) (same). See also Note, Qualified Immunity and Interlocutory Appeal: Is the Protection Lost When Legal and Equitable Claims are Joined?, 87 Colum.L.Rev. 161 (1987) (supporting immediate appealability); cf. Musso v. Hourigan, 836 F.2d 736, 742 n. 1 (2d Cir.1988) (allowing appeal of qualified immunity defense on one claim for damages although defendant faced potential damages liability on second claim still pending in trial court); Brown v. Texas A & M University, 804 F.2d 327, 332 (5th Cir.1986) (same).
 
 
 10
 The basic premise of the minority view is that because resolution of the qualified immunity issue does not affect a claim for injunctive relief, and the defendant must stand trial anyway, the policies served by interlocutory appeal are not present. As the Fourth Circuit stated in Bever:
 
 
 11
 "Whether or not [defendants] are immune from damages against them in their individual capacities, the litigation will demand their time and attention. A present declaration of immunity from damages claims cannot avoid the diversion of their attention from official duties which the litigation will occasion.
 
 
 12
 ....
 
 
 13
 In these circumstances, the question whether a denial of the immunity claims is appealable would appear to have little effect upon the willingness of responsible persons to serve in public office."
 
 
 14
 724 F.2d at 1087.
 
 
 15
 We believe the Bever court is mistaken. An action for injunctive relief no matter how it is phrased is against a defendant in official capacity only; plaintiff seeks to change the behavior of the governmental entity. Scott, 811 F.2d at 1153-54. Suits against public bodies or official-capacity governmental employees will be defended by government lawyers at no cost to the defendants and with no risk of personal monetary loss. In contrast, an action for damages is against the defendant individually, and if successful will result in personal liability. "[T]he fear of being sued and held personally liable for damages is a far cry from a suit for reinstatement or injunctive relief, which public officials face regularly in the course of performing their duties." Bever, 724 F.2d at 1091 n. 4 (Hall, J., dissenting). Further, individuals who are sued for damages may face the threat of punitive damages and likely will have to undergo the additional expense of retaining counsel. De Abadia, 792 F.2d at 1189-90; Kennedy, 797 F.2d at 306; Tubesing, 742 F.2d at 404 n. 3. This personal liability will deter qualified individuals or business entities from performing work for the government in a way that threats of injunctive relief will not. See Harlow, 457 U.S. at 814, 102 S.Ct. at 2736, De Abadia, 792 F.2d at 1190.
 
 
 16
 Moreover, if a request for injunctive or declaratory relief would prevent an appeal of denials of immunity, plaintiffs would be greatly tempted to join such claims in nearly every action. See Bever, 724 F.2d at 1091 (Hall, J., dissenting); Scott, 811 F.2d at 1154; De Abadia, 792 F.2d at 1190. We believe the policies behind permitting the appeal of a denial of a qualified immunity defense should not be so easily defeated. We therefore adopt the majority view and hold that a pending claim for injunctive relief does not bar our jurisdiction over an interlocutory appeal of a denial of a defense of qualified immunity to a damages claim.
 
 C
 
 17
 DeVargas makes factual assertions which, he alleges, are material and should prevent defendants from appealing. In Mitchell, the Supreme Court allowed interlocutory appeal of a case presenting no factual disputes. The Court emphasized that "the appealable issue is purely a legal one: whether the facts alleged (by the plaintiff, or, in some cases, the defendant) support a claim of violation of clearly established law." 472 U.S. at 528 n. 9, 105 S.Ct. at 2816 n. 9.
 
 
 18
 Later Supreme Court cases have broadened appealability, holding that a court must look at a qualified immunity claim in the context of the particular facts of the case. In Anderson v. Creighton, --- U.S. ----, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Court held that a plaintiff could not establish a "clearly established right" merely by pleading it in general terms, and that the court should examine the "information possessed" by the officials sued to see if a reasonable defendant could have believed his alleged acts to be lawful, in light of clearly established law. Id. at 3040. The court concluded:
 
 
 19
 "The relevant question in this case ... is the objective (albeit fact-specific) question whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed."Id. at 3040. See also Malley v. Briggs, 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986) (police officers applying for arrest warrants are immune if a reasonable officer could have believed probable cause existed to support application).
 
 
 20
 We believe this command that lower courts apply a fact-specific review, when defendants raise before trial a qualified immunity defense, requires more than the court's judgment whether the facts as pleaded would justify a reasonable person taking the allegedly unlawful actions. In this respect we agree with the Eighth Circuit which holds that a court of appeals should consider in the light most favorable to the plaintiff all undisputed facts discernible from the pleadings and other materials submitted to supplement them by the time the motion for summary judgment is made.[2] Trapnell v. Ralston, 819 F.2d 182, 184 n. 1 (8th Cir.1987). See also Green v. Carlson, 826 F.2d 647, 650-52 (7th Cir.1987). We disagree with the First Circuit, which considers only the facts alleged in the complaint, even if some discovery has been completed, see Bonitz v. Fair, 804 F.2d 164, 167-68 (1st Cir.1986).[3]
 
 
 21
 If defendants challenge the complaint by a motion for summary judgment supported by evidence controverting plaintiff's allegations, the court must consider, as it does with respect to any summary judgment motion, whether plaintiff's counteraffidavits or other evidence demonstrate a triable conflict on facts material to defendants' defense. See Kennedy, 797 F.2d at 299-300; see also Mitchell, 472 U.S. at 526, 105 S.Ct. at 2816 ("Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts.") Indeed, in pro se prisoner cases we believe that the court may require what we call a Martinez report, see Martinez v. Aaron, 570 F.2d 317 (10th Cir.1978) (en banc), to determine if a trial is justified. See generally Gee v. Estes, 829 F.2d 1005, 1007 (10th Cir.1987) (per curiam).
 
 
 22
 The Supreme Court's approval of an interlocutory appeal in a fact-specific case like Anderson, in which the district court denied a pretrial qualified immunity defense motion, compels us to take an appeal, we believe, in all cases in which the denial is grounded upon a finding that disputed material facts exist in the case. Our task in such an appeal is not to determine liability on a battle of affidavits, but to determine whether, on the basis of the pretrial record, there exists a conflict sufficiently material to defendants' claim of immunity to require them to stand trial. See, e.g., Garrett v. Rader, 831 F.2d 202 (10th Cir.1987) (ruling against defendant on qualified immunity appeal and remanding for trial).
 
 
 23
 Wright v. Southern Arkansas Regional Health Center, Inc., 800 F.2d 199 (8th Cir.1986), illustrates the problem and the proper resolution. In Wright, plaintiff sued his health center employer, alleging that the employer violated his First Amendment rights by firing him in political retaliation. The constitutional right at issue was clearly established; what the parties disputed on interlocutory appeal, which the Eighth Circuit allowed, was whether sufficient evidence supported the claim that defendant's acts were improperly motivated. The court phrased the qualified immunity question as follows:
 
 
 24
 "To put it in terms of the present case, the issue is not whether defendant was improperly motivated in fact, but, rather, when all the facts are viewed in the light most favorable to plaintiff, there is any genuine issue, triable to a jury, of improper motivation."
 
 
 25
 Id. at 203. See also Chinchello v. Fenton, 805 F.2d 126, 130-32 (3d Cir.1986) (accepting interlocutory appeal of denial of qualified immunity despite presence of factual disputes).[4]
 
 
 26
 No doubt some interlocutory appeals of denials of qualified immunity defenses will be frivolous, as when affidavits or depositions in evidence, if believed, clearly support factual claims of violations of established law. That some interlocutory appeals may be frivolous, however, does not affect whether we have jurisdiction. These appellants or their counsel can be sanctioned for taking a frivolous appeal. Braley v. Campbell, 832 F.2d 1504, 1510-12 (10th Cir.1987) (en banc).
 
 II
 
 27
 * Turning to the substantive issues, we note that DeVargas alleged both Sec. 1983 and Bivens claims. For purposes of this opinion we treat the qualified immunity defenses to both claims as identical, assuming arguendo that a Bivens action would be available against a private party defendant.[5] We further assume that the scope of qualified immunity available to a private party defendant to a Bivens action is as broad as that available to a private defendant charged with the same acts in a Sec. 1983 suit.[6] We thus analyze together the defense of qualified immunity to both claims, and we reach the same result as to both.
 
 
 28
 In its ruling below, the district court denied qualified immunity to defendants Mason & Hanger, Hook, and Hardwick solely because of their status as private parties.[7] The Supreme Court in Lugar v. Edmundson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), raised the possibility of recognizing such a defense but expressly reserved judgment on whether private parties may claim qualified immunity.[8]
 
 
 29
 In cases in which private party defendants allegedly conspired with public officials to deny plaintiffs their constitutional rights, lower courts have denied the private parties qualified immunity. See Howerton v. Gabica, 708 F.2d 380, 385 n. 10 (9th Cir.1983);[9] Downs v. Sawtelle, 574 F.2d 1, 15 (1st Cir.), cert. denied, 439 U.S. 910, 99 S.Ct. 278, 58 L.Ed.2d 255 (1978). But in cases in which private party defendants received the aid of public officials, pursuant to statutes that may be unconstitutional, to attach or garnish plaintiffs' property, the courts have concluded that private party state actor defendants should not be deprived of the qualified immunity defense. See Jones v. Preuit & Mauldin, 808 F.2d 1435, 1440-42 (11th Cir.1987), vacated in part on other grounds, 822 F.2d 998 (11th Cir.1987), opinion vacated and rehearing granted en banc, 833 F.2d 1436 (11th Cir.1987); Watertown Equipment Co. v. Norwest Bank Watertown, N.A., 830 F.2d 1487 (8th Cir.1987); Buller v. Buechler, 706 F.2d 844, 850-52 (8th Cir.1983) (private individual who relies upon unconstitutional state garnishment procedure may assert qualified immunity defense); Folsom Investment Co. v. Moore, 681 F.2d 1032, 1037-38 (5th Cir. Unit A 1982) (private party who relies on presumptively valid state attachment statute may claim qualified immunity); see also Carman v. City of Eden Prairie, 622 F.Supp. 963, 965-66 (D.Minn.1985) (private defendant acting pursuant to state detoxification statute may claim qualified immunity defense); cf. Del's Big Saver Foods Inc. v. Carpenter Cook, Inc., 795 F.2d 1344, 1351 (7th Cir.1986) (recognizing but declining to resolve issue); Thorne v. City of El Segundo, 802 F.2d 1131, 1140 n. 8 (9th Cir.1986) (recognizing but declining to resolve issue in case involving independent contractor defendant).
 
 
 30
 In the instant case, the private party defendants are not alleged to have conspired with a government official to act beyond the boundaries of the law, or to have acted pursuant to an unconstitutional law which permits, but does not require, their conduct. Here, as the district court found, the private defendants reasonably thought that their contract with a government body required them to act in a certain manner. The private parties' contract with LANL required Mason & Hanger to provide security forces for the laboratory, and to do so in accordance with DOE regulations, including IMD 6102.
 
 
 31
 The type of case before us presents the strongest arguments for extending qualified immunity to private party defendants. First, the governmental authority involved requires private defendants to act as they do. Indeed, were they to act otherwise they would likely be liable for breach of contract to the governmental body with whom they contracted. Not to allow immunity here places defendants between Scylla and Charybdis[10]--potentially liable either to plaintiffs for obeying the contract, or to governmental bodies for breaching it.
 
 
 32
 Second, the functions which the private parties performed pursuant to contract are functions which governmental employees would perform had the government not contracted them out. The Supreme Court instructs courts to examine the function of individual defendants--the nature of the individual responsibilities--not their status, in resolving immunity defenses. Forrester v. White, --- U.S. ----, 108 S.Ct. 538, 545, 98 L.Ed.2d 555, 4070 (1988); Cleavinger v. Saxner, 474 U.S. 193, 201, 106 S.Ct. 496, 501, 88 L.Ed.2d 507 (1985). We conclude that when private party defendants act in accordance with the duties imposed by a contract with a governmental body, perform a governmental function, and are sued solely on the basis of those acts performed pursuant to contract,[11] qualified immunity is proper.[12]
 
 B
 
 33
 DeVargas argues that if we conclude that private parties may claim immunity, we should distinguish between the individual defendants (Hook, Hardwick) and the corporate defendant (Mason & Hanger), and grant Sec. 1983 qualified immunity only to the individuals. DeVargas bases this argument on the following syllogism: (1) municipal defendants in Sec. 1983 actions are not vicariously liable for their employees' acts, but may be liable only upon a showing that their employees acted pursuant to official policy or custom, Monell v. Department of Social Services, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); (2) corporate defendants similarly are not vicariously liable under Sec. 1983, Lusby v. T.G. & Y. Stores, Inc., 749 F.2d 1423, 1432-33 (10th Cir.1984), cert. denied, 474 U.S. 818, 106 S.Ct. 65, 88 L.Ed.2d 53 (1985) (cert. petition of private defendant T.G. & Y. Stores);[13] (3) municipal defendants in Sec. 1983 claims receive no qualified immunity defense, Owen v. City of Independence, 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980); and therefore corporate defendants to Sec. 1983 suits likewise should not be able to claim qualified immunity.
 
 
 34
 The basic premise underlying DeVargas' argument is that because the courts have extended the principle that municipalities are not vicariously liable under Sec. 1983 to include corporate defendants, we should similarly extend the rule that municipalities are not entitled to qualified immunity to private corporations. We reject this premise. The issue of whether parties should be held vicariously liable is completely distinct from whether parties should be entitled to qualified immunity.
 
 
 35
 The Supreme Court's holding in Monell was based on congressional intent that Sec. 1983 liability not be imposed vicariously. See Monell, 436 U.S. at 691-92, 98 S.Ct. at 2036. Although Monell addressed only the liability of municipalities, the rationale of its holding applies equally to corporate defendants. Lusby, 749 F.2d at 1433; Powell v. Shopco Laurel Co., 678 F.2d 504, 506 (4th Cir.1982). In the area of Sec. 1983 immunities, the critical distinction is not between employer and individual defendants, but between defendants that are governmental bodies and other defendants. "[D]ifferent considerations come into play when governmental rather than personal liability is threatened." Owen, 445 U.S. at 653 n. 37, 100 S.Ct. at 1416 n. 37. When the Court has addressed immunity of government actors who may be personally liable, it has made it clear that immunity in some form is the norm. See Harlow, 457 U.S. at 818 & n. 30, 102 S.Ct. at 2738 & n. 30. Similarly, we have just held generally that when private parties act pursuant to contractual duties and perform governmental functions, they can claim qualified immunity. That a private party defendant is a corporation should not change this result.
 
 
 36
 In establishing qualified immunity for public officials, the Court has emphasized policy reasons making that immunity necessary: (1) the injustice of making defendants personally liable merely for performing their duties, (2) the concern that the lack of qualified immunity would render public officials overcautious in their jobs, and (3) the difficulty of attracting qualified persons into public service were immunity not available. See Scheuer v. Rhodes, 416 U.S. 232, 240, 94 S.Ct. 1683, 1688, 40 L.Ed.2d 90 (1974); Harlow, 457 U.S. at 814, 102 S.Ct. at 2736. These reasons apply equally to all private defendants acting pursuant to contract, whether individuals or corporations. A nonimmune contractor defendant would be required to bear the total cost of plaintiff's injury, regardless of the objective reasonableness of its acts.[14] In addition, denying immunity would make contractor defendants--whether individual or corporate--more timid in carrying out their duties and less likely to undertake government service.
 
 
 37
 In contrast, a governmental body found liable can pay the judgment from the public treasury, shifting the cost to society at large; thus denying immunity does not cause the same injustice. See Owen, 445 U.S. at 654-55 & n. 39, 100 S.Ct. at 1417 & n. 39. And the liability of the municipality itself will have little chilling effect on the acts of its officers when those officers are not personally liable. Id. at 655-56, 100 S.Ct. at 1417.
 
 
 38
 We therefore conclude that the corporate status of Mason & Hanger should not affect its immunity. See Folsom, 681 F.2d at 1037-38 (allowing immunity to private insurance corporations); Watertown Equipment Co., 830 F.2d at 1490 (corporate defendant entitled to claim qualified immunity defense); see also Jones, 808 F.2d at 1440-42 (private partnership may invoke qualified immunity defense).
 
 III
 
 39
 The district court denied qualified immunity to defendants Hook, Hardwick and Mason & Hanger solely on the basis of their private status, and granted qualified immunity for all public employee defendants. Since we conclude that these private defendants may claim qualified immunity, we must next ask whether they are entitled to immunity on the facts before us.
 
 
 40
 In reviewing appeals of denials of qualified immunity, our primary concern is not whether defendants violated plaintiffs' rights, but whether defendants "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. If the law was not clearly established at the time defendants acted, they are entitled to qualified immunity. Id.; Mitchell, 472 U.S. at 524, 105 S.Ct. at 2814. The test of what law is clearly established "should be determined in a particularized sense." Garrett v. Rader, 831 F.2d 202, 204 (10th Cir.1987); Anderson, 107 S.Ct. at 3040. This test requires "some but not precise factual correspondence" between precedent establishing law and the case on review, and demands that defendants apply "general, well developed legal principles." Garcia v. Miera, 817 F.2d 650, 657 (10th Cir.1987) quoting People of Three Mile Island v. Nuclear Regulatory Commission, 747 F.2d 139, 144 (3d Cir.1984).
 
 
 41
 DeVargas presents not material fact questions,[15] but two basic theories of liability for handicap discrimination, one based upon a reading of IMD 6102, and the other on a constitutional violation if defendants' interpretation of IMD 6102 is correct.[16] Under the foregoing test, neither of plaintiff's theories establishes a violation of a "clearly established right" of which a reasonable defendant would be aware.
 
 
 42
 * DeVargas' first theory asserts that IMD 6102, as a federal regulation, gave him the right to a physician's review of his disqualification for having sight in only one eye. DeVargas argues that because IMD 6102 A 3 e[17] requires a "designated physician" to determine whether an examinee meets the medical qualification standards, defendants erred in not having a physician determine his disqualification under IMD 6102 A 6 b (8) for being one-eyed. DeVargas claims defendants compounded this initial error because no designated physician reviewed DeVargas' initial disqualification under IMD 6102 A 6 c.[18] He asserts that these errors constitute a Sec. 1983 violation.
 
 
 43
 We do not decide whether DeVargas' rights under IMD 6102 were violated or indeed whether IMD 6102 can provide the basis for a Sec. 1983 claim,[19] for any rights DeVargas had under IMD 6102 to physician review were not clearly established. First, DeVargas has not identified any authoritative interpretation of IMD 6102 extant when he applied for employment. In addition, while IMD 6102 A 3 e appears to require a physician to make all medical qualification decisions, such a requirement makes sense only with regard to those medical disqualifications under IMD 6102 A 6 b which require the physician's judgment to determine their presence,[20] or require a review of medical history or diagnosis.[21] In contrast, IMD 6102 A 6 b (8) does not refer to medical judgment, review of history, or diagnosis, but states a mandatory disqualification. Thus, whether a physician must confirm what DeVargas already knew and fully disclosed--his monocular condition--when the presence of that condition is a mandatory disqualification for security inspectors, was not "clearly established" at the time defendants acted.[22]
 
 
 44
 Finally, DeVargas has no right to physician review under IMD 6102 A 6 c, as that section allows physician review, but does not require it.
 
 B
 
 45
 DeVargas' second argument is that if defendants' reading of IMD 6102--that it prohibits hiring one-eyed security inspectors--is correct, the regulation violates clearly established equal protection rights of the handicapped. This argument also lacks merit. Since the handicapped are not a suspect class for equal protection analysis, Brown v. Sibley, 650 F.2d 760, 765-66 (5th Cir. Unit A 1981), and DeVargas has no fundamental constitutional right to government employment, Coleman v. Darden, 595 F.2d 533, 538 (10th Cir.), cert. denied, 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1979), IMD 6102 violates equal protection only if it is not rationally related to the goals of DOE, which promulgated it. Plaintiff points to no decision that IMD 6102 or a similar rule lacks rational basis. Indeed, DOE's and Congress' concern with protecting the classified and nuclear material at LANL, see Transcript of Proceedings Before the Subcommittee on Procurement & Military Nuclear Systems of the Committee on Armed Services of the United States House of Representatives, III R. tab 65C at 17-18, 23-25 (dialogue between Congressman Daniel and Thomas R. Clark, Deputy Manager, Albuquerque Operations Office, DOE), together with the logical inference that a fully sighted person may perform those security functions more capably than an individual only partially sighted, go far to show such rational basis. At any rate, neither IMD 6102's disqualification of one-eyed persons nor defendants' enforcement of IMD 6102 violates clearly established equal protection rights. Defendants therefore are entitled to qualified immunity.[23]
 
 
 46
 In summary, we accept jurisdiction of this appeal, REVERSE the district court's denial of qualified immunity for private defendants Hook, Harwick, and Mason & Hanger, and REMAND for trial on such equitable claims as remain before the district court.
 
 
 
 [1]
 The district court earlier dismissed claims against Regents and LANL on the ground that they were entitled to immunity under the Eleventh Amendment. It also dismissed, on the ground of federal sovereign immunity, the damages claims against DOE and those DOE officials sued in their official capacities. The claims against fictitious defendants were struck with the parties' consent. These district court rulings are not now before us on appeal
 
 
 [2]
 The court should consider all materials that are a part of the record at the time the motion for summary judgment is made. In some cases, only the pleadings are evaluated, see Hobson v. Wilson, 737 F.2d 1, 29 (D.C.Cir.1984) (plaintiffs required to meet heightened pleading standard in order to proceed to discovery), while in others, information developed by discovery is evaluated as well. See Green, 826 F.2d at 650
 
 
 [3]
 In Mendez-Palou v. Rohena-Betancourt, 813 F.2d 1255 (1st Cir.1987), the First Circuit elaborated upon this position. The court held that it could consider other undisputed facts in the record if the plaintiff had not alleged facts sufficient to determine whether defendants' actions violated clearly established law. Id. at 1259-60. See also Vazquez Rios v. Hernandez Colon, 819 F.2d 319, 321-23 (1st Cir.1987) (looking to additional facts in record because plaintiffs' conclusory allegations were not sufficient for court to make reasoned finding on qualified immunity defense)
 
 
 [4]
 Several other circuits have accepted appeals from the denials of qualified immunity defenses despite the presence of factual disputes. See, e.g., Whitt v. Smith, 832 F.2d 451 (7th Cir.1987); Dominque v. Telb, 831 F.2d 673 (6th Cir.1987); Emery v. Holmes, 824 F.2d 143 (1st Cir.1987). Implicit in the courts' review of the merits of the defenses is the decision that the courts had jurisdiction of the appeals despite the presence of factual disputes
 
 
 [5]
 We need not decide whether or when a Bivens claim may be stated against private party defendants, as we rule that these private parties could claim qualified immunity in any event. See Bothke v. Fluor Engineers & Constructors, Inc., 834 F.2d 804, 809 (9th Cir.1987). Resolution of this issue is by no means clear
 The district court below did not address whether a Bivens claim can be made against private party "federal actors." The circuits appear split on this point. Four circuits have held that a private party federal actor may be liable in a Bivens action: Reuber v. United States, 750 F.2d 1039, 1053-57 (D.C.Cir.1984); Dobyns v. E-Systems, Inc., 667 F.2d 1219 (5th Cir.1982); Yiamouyiannis v. Chemical Abstracts Serv., 521 F.2d 1392 (6th Cir.1975), cert. denied, 439 U.S. 983, 99 S.Ct. 573, 58 L.Ed.2d 654 (1978); but compare Wagner v. Metropolitan Nashville Airport Auth., 772 F.2d 227, 230 (6th Cir.1985) (majority opinion rejects Bivens claim on grounds plaintiff did not allege defendant was federal employee ); Schowengerdt v. General Dynamics Corp., 823 F.2d 1328, 1337-38 (9th Cir.1987). One circuit has refused to allow Bivens actions against private parties: Fletcher v. Rhode Island Hosp. Trust Nat'l Bank, 496 F.2d 927, 932 n. 8 (1st Cir.), cert. denied, 419 U.S. 1001, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974). Three circuits have expressly left open the question of whether a Bivens claim may ever be asserted against a private party: Stevens v. Morrison-Knudsen Saudi Arabia Consortium, 576 F.Supp. 516, 520-21 (D.Md.1983), aff'd mem., 755 F.2d 375 (4th Cir.1985); McNally v. Pulitzer Publishing Co., 532 F.2d 69, 75-76 (8th Cir.), cert. denied, 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976); Morast v. Lance, 807 F.2d 926, 930-31 (11th Cir.1987).
 
 
 [6]
 The cases discussing qualified immunity of government officials apply essentially the same analysis whether a Sec. 1983 or Bivens claim is made. See Butz v. Economou, 438 U.S. 478, 500, 98 S.Ct. 2894, 2907, 57 L.Ed.2d 895 (1978) ("no basis for according to federal officials a higher degree of immunity from liability when sued for a constitutional infringement as authorized by Bivens than is accorded state officials when sued for identical violations under Sec. 1983"); Harlow, 457 U.S. at 818 n. 30, 102 S.Ct. at 2738 n. 30 (same qualified immunity for state and federal officials)
 
 
 [7]
 At oral argument we expressed some concern whether the defendants were federal or state actors for purposes of a Sec. 1983 or Bivens claim. See Rendell-Baker v. Kohn, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); Jackson v. Metropolitan Edison Co., 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); Vincent v. Trend Western Technical Corp., 828 F.2d 563, 567-68 (9th Cir.1987); Milonas v. Williams, 691 F.2d 931, 939-40 (10th Cir.1982). The defendants do not dispute in this appeal the district court's finding that they were state actors for purposes of the Sec. 1983 claim and federal actors for the Bivens claim. We therefore do not discuss that issue
 
 
 [8]
 In Lugar, the Court held that a private party who jointly participated with state officials in seizing property pursuant to a procedurally defective state statute could be sued under Sec. 1983 as acting "under color of state law." In responding to the dissent's concern about the effect of this ruling upon private individuals who innocently rely upon seemingly valid state laws, the court noted that the problem should be dealt with not by changing the elements of a Sec. 1983 claim, but by establishing an affirmative defense. "A similar concern is at least partially responsible for the availability of a good-faith defense, or qualified immunity, to state officials. We need not reach the question of the availability of such a defense to private individuals at this juncture." Id. 457 U.S. at 942 n. 23, 102 S.Ct. at 2756 n. 23
 
 
 [9]
 In Howerton, the Ninth Circuit appeared to state a broad rule that private party defendants could never claim good faith immunity. "[T]here is no good faith immunity under section 1983 for private parties who act under color of state law to deprive an individual of his or her constitutional rights." Id. at 385 n. 10. In a later case, however, the court appeared to retreat from this ruling. See Thorne v. City of El Segundo, 802 F.2d 1131, 1140 n. 8 (9th Cir.1986) (raising but not deciding question of whether independent contractor state actor could claim qualified immunity defense)
 
 
 [10]
 See Homer, The Odyssey, Book XII, 11.85-112; see also The Oxford Classical Dictionary, 228 (Charybdis), 968 (Scylla) (N. Hammond & H. Scullard 2d Ed.1970)
 
 
 [11]
 We express no opinion on the propriety of granting qualified immunity when a private contractor performing a governmental function, such as operating a prison, performs acts not required by the contract, and is sued for those acts. See Kay, The Implications of Prison Privatization on the Conduct of Prisoner Litigation Under 42 U.S.C. Section 1983, 40 Vand.L.Rev. 867, 883-88 (1987) (suggesting that when private contractors violate constitutional duties in order to maximize profit, qualified immunity is improper)
 
 
 [12]
 Myers v. Morris, 810 F.2d 1437 (8th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987), although primarily discussing absolute immunity for private defendants, is similar conceptually to the case before us. In Myers, the private party defendants were appointed by a state court to provide recommendations and reports concerning child abuse proceedings pending before that court. In granting absolute immunity for quasi-judicial functions, the court noted that the private defendants had the "authority, and perhaps the duty " to perform the acts of which plaintiffs complained. Id. at 1467 (emphasis added)
 
 
 [13]
 Mason & Hanger does not dispute that its conduct satisfied the Lusby test for corporate Sec. 1983 liability. See Appellants' Brief-in-Chief at 16-17 (firm had policy, pursuant to terms of contract, of not hiring one-eyed security inspectors)
 
 
 [14]
 DeVargas argues that this cost rationale should have little effect here, as Mason & Hanger's defense and litigation costs may ultimately be paid by DOE as expenses. Even if Mason & Hanger will ultimately bear no costs here, however, the fact remains that DOE will only reimburse Mason & Hanger and therefore that Mason & Hanger must pay some costs up front. Bearing this cost imposes a burden on Mason & Hanger, and may discourage it and other private corporations from entering government contracts in the future
 
 
 [15]
 DeVargas asserts the existence of two questions of material fact that would preclude a grant of immunity. The first question which DeVargas styles as "factual" concerns the proper meaning and interpretation of IMD 6102. Since IMD 6102 is a federal regulation, its interpretation is a question of law, not of fact. Hoover & Bracken Energies, Inc. v. United States Department of Interior, 723 F.2d 1488, 1489 (10th Cir.1983), cert. denied, 469 U.S. 821, 105 S.Ct. 93, 83 L.Ed.2d 39 (1984). The second question is whether defendants' reliance on their interpretation of IMD 6102 to deny DeVargas employment was reasonable. See infra note 22. Although the reasonableness of this reliance presents a factual dispute, this dispute is not material in light of our conclusion, infra, at 724-725, that any right which DeVargas claims was not clearly established at the time defendants acted
 
 
 [16]
 DeVargas does not assert on appeal, and we do not address, his earlier claim that defendants' conduct violated Sec. 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794. The district court granted summary judgment against DeVargas on his Sec. 504 claims, finding Mason & Hanger not a recipient of "federal financial assistance," a necessary element of such claims
 
 
 [17]
 IMD 6102 A 3 e provides: "The ascertainment as to whether or not the examinee meets the medical standards of this part shall be made by a designated physician." II R. tab 65B-1 at 3
 
 
 [18]
 IMD 6102 A 6 c provides:
 "Despite an initial indication of medical disqualification, examinees may be considered for medical qualification when, in the judgment of the designated physician, a thorough history, supplemental physical examination and other appropriate laboratory test [sic] and medical investigative procedures indicate that the examinee can safely and effectively perform all normal and emergency job duties; and provided that the designated physician determines that all such duties are within the physical capability and exercise tolerance of the examinee. The designated physician shall notify the cognizant field office management authority of, and document the basis for, such determinations at the time they were made."
 II R. tab 65B-1 at 12-13.
 
 
 [19]
 In at least some instances, violations of rights provided under federal regulations provide a basis for Sec. 1983 suits. Wright v. City of Roanoke Redevelopment & Housing Auth., 479 U.S. 418, 107 S.Ct. 766, 774, 93 L.Ed.2d 781 (1987); Samuels v. District of Columbia, 770 F.2d 184, 199-201 (D.C.Cir.1985). We need not now decide whether violation of the regulation here in question allows for suit under Sec. 1983, as we hold defendants can claim qualified immunity from damages. See Gholston v. Housing Auth. of City of Montgomery, 818 F.2d 776, 780-81 (11th Cir.1987) (avoiding question of whether regulation under review could form basis for Sec. 1983 suit)
 
 
 [20]
 See, e.g., IMD 6102 A 6 b (1) (respiratory disabilities); IMD 6102 A 6 b (2) (b) (cardiovascular disabilities); IMD 6102 A 6 b (3) (a) (endocrine, nutritional or metabolic disabilities); IMD 6102 A 6 b (5) (hematopoietic disorders); IMD 6102 A 6 b (6) (malignant neoplasms)
 
 
 [21]
 See, e.g., IMD 6102 A 6 b (7) (neurological disorders); IMD 6102 A 6 b (9) (mental or emotional disorders)
 
 
 [22]
 Also relevant, as the district court noted, was the fact that defendants did not rely on their own interpretation of IMD 6102 A 6 b (8) as a mandatory disqualification, but sought the opinion of other individuals at Mason & Hanger and LANL, including an attorney for LANL. All of these individuals likewise saw A 6 b (8) as mandatory and disqualifying
 
 
 [23]
 DeVargas also argues in his brief that section 503 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 793, and regulations enacted pursuant thereto, establish a duty, or at least a strong congressional policy, for government contractors to hire the handicapped. To the extent DeVargas argues violation of a Sec. 503 duty, we reject the theory because it was not raised in his complaint before the district court. To the extent he argues that Sec. 503 shows congressional policy to hire the handicapped, such a policy statement cannot constitute a "clearly established rule of law," the violation of which would foreclose immunity