5 F.3d 545
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Ron GARRISON, individually; Peggy Garrison, individually;
Ron Garrison, as next friend of Robert Garrison, a
minor child, Plaintiffs-Appellants,
v.
CITY OF CUSHING, a municipal corporation; John Lozano;
Joel Hale; Forrest Britton, Don Gourley, individually and
in his official capacity as Police Chief for the City of
Cushing, Defendants-Appellees.
 No. 92-6105.
 United States Court of Appeals, Tenth Circuit.
 Aug. 20, 1993.
 
 ORDER AND JUDGMENT*
 Before BRORBY, SETH and HOLLOWAY, Circuit Judges.
 
 
 1
 Appellants Ron Garrison, Peggy Garrison, and Robert Garrison filed an action pursuant to 42 U.S.C.1983 against Appellees City of Cushing, police officers John Lozano, Joel Hale, and Forrest Britton, and Police Chief Don Gourley in the United States District Court for the Western District of Oklahoma. Appellants alleged that their constitutional rights were violated when the police officers entered their house without a warrant to arrest Freeman Garrison, the brother of Appellant Ron Garrison.
 
 
 2
 On cross-motions for summary judgment, the district court found that the officers were qualifiedly immune from the suit and accordingly granted Appellees' motion for summary judgment as to any personal liability of the police officers, any personal or official liability of the police chief, and any liability of the City of Cushing. The court additionally sua sponte granted summary judgment on the issue of the police officers' official liability. Because of this decision, the court declined to address the constitutionality of certain state statutes, and denied Appellants' summary judgment motion.
 
 
 3
 On appeal, Appellants argue that (1) the district court erred in its application of the qualified immunity defense of the police acting in their individual capacities, (2) the district court erroneously granted summary judgment to the City of Cushing and to the police officers in their official capacities, and (3) that the Oklahoma statutes are unconstitutional. We reverse and remand.
 
 
 4
 The undisputed facts of this case are as follows. On Saturday, November19, 1988, Freeman Garrison allegedly vandalized the house of his former wife and fired shots at her boyfriend. Police officers investigated the incident on that day. The report form for the incident indicates that there were three possible addresses at which Freeman Garrison could be found. The officers returned to take further statements on Monday, November21, 1988. Freeman Garrison's former wife told the officers that she had been informed that Freeman Garrison intended to kill everyone in the house in which she resided. Officer Hale discussed with a Payne County Assistant District Attorney whether there was probable cause to arrest Freeman Garrison, and was informed that probable cause did exist. On Monday, November21, Officer Britton prepared and signed for submission to the Payne County District Court an affidavit relating to probable cause for the arrest of Freeman Garrison.
 
 
 5
 Acting on information from the victims that Freeman Garrison was at the house of Ron Garrison, one of the addressees listed on the report form, Officers Lozano, Hale and Britton went to Appellants' house to arrest Freeman Garrison on a charge of assault with a dangerous weapon.
 
 
 6
 When the officers arrived at the house, the front door was open and the screen door was shut. The officers knocked at the door and inquired of Ron Garrison if Freeman Garrison was there. Ron Garrison told Freeman Garrison, who was sitting in the room but out of sight of the officers, that the officers wanted to talk to him.
 
 
 7
 At this point, Appellants and Appellees disagree about the facts. Appellants contend that Freeman Garrison approached within four to five feet of the doorway and asked Officer Hale if he had a warrant. Upon learning that there was no warrant, Freeman Garrison stated that he would not speak with the officers. The officers informed him that he was under arrest. Freeman Garrison merely returned to his chair. The officers entered the house and arrested Freeman Garrison after a struggle. Alternatively, Appellees contend that Freeman Garrison stepped out onto the porch, changed his mind and retreated into the house, and was pursued by the officers. For the purposes of the summary judgment motion and this appeal, however, Appellees accept Appellants' version of the facts.
 
 
 8
 In the district court, Appellees filed a motion for summary judgment, contending that the officers were immune from suit. When a public official raises a defense of qualified immunity, the plaintiff must initially make a showing that the alleged conduct of the official violated the law, and that the law was clearly established when the alleged violation occurred. Hinton v. City of Elwood, --- F.2d ----, ---- (10th Cir.), No. 91-3327, slip op. at 10, citing Pueblo Neighborhood Health Centers v. Losavio, 847 F.2d 642 (10th Cir.). "If the plaintiff makes the required twofold showing, the public official then bears the usual summary judgment movant's burden of showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." Hinton, --- F.2d at ----, slip op. at 11, citing Woodward v. City of Worland, 977 F.2d 1392, 1396-97 (10th Cir.). We have specifically required the public official to show that no material issues of fact remain as to whether his or her actions were "objectively reasonable in light of the law and the information he or she possessed at the time." Hinton, --- F.2d at ----, slip op. at 11, quoting Coen v. Runner, 854 F.2d 374, 377 (10th Cir.). We evaluate the evidence in a light most favorable to the non-moving party to determine whether each party has met the requisite burden of proof. Patrick v. Miller, 953 F.2d 1240, 1243 (10th Cir.), quoting DeVargas v. Mason & Hanger-Silas Mason Co., 844 F.2d 714, 719 (10th Cir.). "Our task ... is not to determine liability ... but to determine whether, on the basis of the pretrial record, there exists a conflict sufficiently material to defendants' claim of immunity to require them to stand trial." Id.
 
 
 9
 Under this analysis, the district court found that even accepting Appellants' facts as true, Appellants did not prove that the officers violated clearly established law. The court found that a reasonable officer would not have known that under the circumstances presented the seizure of Freeman Garrison would violate the clearly established law regarding Appellants' constitutional rights. The district court determined that not only was the law not clearly established that the officers' actions were violative, but that in fact their conduct was lawful. Specifically, the district court held that the officers could have reasonably concluded that Freeman Garrison was under actual arrest prior to the entry of the officers into the house. The court alternatively held that even if Freeman Garrison was not under actual arrest until the police entered the house, the arrest was nonetheless lawful because Freeman Garrison was in plain and public view within the house, the officers were in hot pursuit, and exigent circumstances existed.
 
 
 10
 We disagree with the district court, and find that the law was clearly established at the time these events took place that the warrantless entry into a house, under the circumstances presented here, would violate Appellants' constitutional rights and that material issues of fact remain as to whether the officers' actions were objectively reasonable in light of the law and the information they possessed at the time.
 
 
 11
 The Fourth Amendment on its face protects the sanctity of a person's house. The Supreme Court has consistently held that searches and seizures inside a house without a warrant are presumptively unreasonable. See Payton v. New York, 445 U.S. 573, 587; Coolidge v. New Hampshire, 403 U.S. 443, 474-475. Payton establishes that the protection afforded by the Fourth Amendment starts at the threshold of a house:
 
 
 12
 "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."
 
 
 13
 Payton, 445 U.S. at 590. In a public place, however, the warrantless arrest of an individual based on probable cause does not violate the strictures of the Fourth Amendment. United States v. Watson, 423 U.S. 411. The Supreme Court has further held that a person standing directly in the doorway of a house stands in a public place and thus renounces the expectation of privacy and the concomitant Fourth Amendment protection. United States v. Santana, 427 U.S. 38.
 
 
 14
 Appellees argue that this case is akin to Santana, in which the Supreme Court determined that the arrest process began when the officers saw the defendant in her doorway and went to arrest her, shouting "police." Appellees contend that the officers in this case reasonably believed that Freeman Garrison was under arrest when they saw him through the screen door and informed him that he was under arrest. Thus, their entrance into the house was merely the pursuit of a suspect who was escaping arrest.
 
 
 15
 We disagree with this analysis because the case law does not indicate that such a belief by the officers was reasonable. The defendant in Santana was considered to be standing in a public place because:
 
 
 16
 "She was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house."
 
 
 17
 Id. at 42. On Appellants' facts, however, Freeman Garrison was standing four to five feet within the house behind a screen door. Although visible to the public, he was not as exposed to public view, speech, hearing, and touch as if he were outside the house. We find that the facts of Santana are insufficiently similar to enable an officer to reasonably believe that a person standing four to five feet from a doorway, behind a screen door, places that person in the public realm, subject to a warrantless arrest. Particularly in light of the Supreme Court's subsequent opinion in Payton, specifically stating that the threshold of a house creates the public/private boundary for Fourth Amendment purposes, we believe that the law was clearly established, and a reasonable officer would have known, that such an arrest would violate the Fourth Amendment. We note that in United States v. Burns, 624 F.2d 95 (10th Cir.), we upheld a limited, warrantless search of a motel room incident to the warrantless arrest of its occupants as they emerged from the room. The circumstances of the actual arrest, however, were not at issue in the case.
 
 
 18
 Were this the only rationale behind the decision of the district court, we would thus declare summary judgment to be inappropriate at this point because the disputed fact of whether Freeman Garrison remained within the house or actually stepped beyond the threshold is determinative of whether he was arrested prior to the entry into the house by the officers. However, the district court alternatively held that even if Freeman Garrison was not under actual arrest before the police entered the house, the seizure was nevertheless lawful based on exigent circumstances. The district court specifically concluded:
 
 
 19
 [T]hat at the time of the alleged constitutional violation ... the law was not clearly established that the police were prohibited from pursuing an identified dangerous felon and entering an unlocked private dwelling to consummate his warrantless arrest upon probable cause and subsequent to verbally placing the suspect under arrest when he was in plain, public view and hearing within the dwelling. In fact, the Court concludes that the arrest was lawful.
 
 
 20
 As noted by the district court, a warrantless entry for some limited purposes inside a home is permissible if the police have probable cause to search the residence and exigent circumstances are present. Payton, 445 U.S. at 578; United States v. Erb, 596 F.2d 412, 417 (10th Cir.). Appellants do not contend that probable cause was lacking in this case. Consequently, because we have stated that under the facts of the summary judgment motion the officers did not place Freeman Garrison under arrest prior to entering the house, the officers will enjoy the protection of qualified immunity only if exigent circumstances justified their warrantless entry.
 
 
 21
 The term "exigent circumstances" generally refers to the following circumstances: "imminent danger of death or serious bodily harm, imminent danger of destruction of important property, response to an emergency, or hot pursuit of a fleeing felon." United States v. Gonzalez, 763 F.2d 1127, 1132 n.5 (10th Cir.).
 
 
 22
 Appellees argue, and the district court found, several rationales supporting a finding that exigent circumstances existed in this case. The district court noted that Freeman Garrison was difficult to locate, and the officers had been informed that Freeman Garrison was at Appellants' house an hour before the arrest. The court determined that because the officers received a "hot tip," quick and decisive police action was required and there was no time to obtain a warrant. Thus, the court reasoned, the officers were in hot pursuit of Freeman Garrison. We disagree.
 
 
 23
 The police report written on Saturday, November 19, indicates that Appellants' house was one of three addresses where Freeman Garrison could possibly be found. Freeman Garrison thus was not very difficult to locate, since he was found at one of three known addresses. Further, hot pursuit generally requires some sort of a chase, however short it may be. Santana, 427 U.S. at 43. Here there was no chase at all, just the receipt of a fresh tip regarding his location. The receipt of a tip cannot transform a routine investigation into a hot pursuit absent other circumstances. See Steagald v. United States, 451 U.S. 204, 218 (distinguishing hot pursuit searches from routine searches and characterizing officers' planned search of third party's home for a fugitive as a "routine search" where, two days before the search, officers received a tip regarding the location of the fugitive).
 
 
 24
 Further, because we have determined that under Appellants' version of the facts, Freeman Garrison did not enter a public place and renounce his expectation of privacy when he stepped within four or five feet of the screen door of Appellants' house, the police were not in hot pursuit of a fleeing felon whose arrest had been initiated in a public place like in Santana.
 
 
 25
 Appellees further urge that the following facts also indicate that exigent circumstances were present. Freeman Garrison was accused of unpredictable and dangerous behavior, it was known that he had access to a handgun and had threatened to kill his former wife and her family, and he could have escaped and carried out the threat. We hold that these circumstances do not rise to the level of exigent circumstances.
 
 
 26
 As stated above, in order for the exigent circumstances exception to apply, there must be an immediate need to protect the lives of the police officers or others or their property or that of others. The officers knew that Freeman Garrison possessed a handgun and had allegedly fired it before they approached the house. There is no evidence that the officers feared for their safety or the safety of those in the house with Freeman Garrison. Nor is there evidence that his escape was anything more than a remote possibility. We held in United States v. Aquino, 836 F.2d 1268, 1272 (10th Cir.), that the exigent circumstances exception involving possible destruction of evidence is available only when destruction of evidence is likely. Similarly, when escape is merely possible, but not a probability, the exception is unavailable. Especially in light of the fact that the officers had already initiated proceedings to obtain a warrant and had been informed that probable cause existed, there was ample opportunity to obtain the warrant either when they first received the location tip or after they ascertained that Freeman Garrison was in the house. Placing the house under surveillance while obtaining a warrant was not unreasonable absent evidence of a realistic fear that Freeman Garrison posed a risk of harm to the officers or others, or that there was a real possibility that he would escape.
 
 
 27
 Viewing the facts in the light most favorable to Appellants, the officers could not have reasonably believed that the search comported with clearly established Fourth Amendment law. Material to this conclusion, however, is the fact that Freeman Garrison remained four to five feet within the house behind a closed screen door. This fact is in genuine dispute, and thus summary judgment regarding the qualified immunity of the officers was inappropriate.
 
 
 28
 We therefore REVERSE and REMAND for trial and for a determination of the personal and official liability of the Police Chief and the City of Cushing, and decline Appellants' invitation to rule on the constitutionality of the Oklahoma statutes.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3