James L. RENALDE, Jr., Kenneth W. Blount, and Renee Blount, Plaintiffs,

v.

CITY AND COUNTY OF DENVER, COLORADO, et al., Defendants.

Civ. A. No. 91–B–101.

United States District Court, D. Colorado.

Dec. 1, 1992.

William S. Finger, Frank & Finger, P.C., Evergreen, CO, for plaintiffs.

Theodore S. Halaby, Robert M. Liechty, Halaby & McCrea, Denver, CO, for defendants.

Tom Dunn, Dill, Dill & Carr, P.C., Denver, CO, co-counsel for defendants Robert Rathburn, Larry D. Watts and Robert Organ.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendants move for summary judgment on all claims. The issues are adequately briefed and oral argument will not materially aid their resolution. For the reasons set out below, the motion is granted in part and denied in part.

This case arises out of the allegedly false arrest of plaintiffs. As part of his routine duties, defendant Robert Rathburn (Rathburn), a detective in the vice bureau of the Denver Police Department was monitoring a Denver escort service which he discovered was a front for prostitution. Rathburn learned that the main headquarters for the prostitution ring was 2535 Champa Street, but that occasionally calls would be forwarded to a telephone at 244 Grant Street, the residence where plaintiffs were arrested. Consequently, Rathburn obtained warrants to search both residences.

On January 13, 1990, the night of the searches, the vice bureau set up a sting operation in which an undercover officer called the escort service. The telephone call was forwarded to 244 Grant Street and someone in that residence wrote the officer's name down on a note pad by the phone. At that time, the Grant Street residence was not under police surveillance so defendants do not know if anyone came or left that residence after the phone call and before the search.

At approximately 10:00 p.m. that evening, Rathburn led the search of the Champa Street address. Defendant Sergeant Robert Organ (Organ) led the Denver police SWAT team into the Grant Street Residence, where plaintiff Kenneth Blount answered the door. Blount was immediately handcuffed and put face down on the living room floor. The SWAT team, wearing masks and wielding submachine guns, discovered plaintiffs Renee Blount and James Renalde asleep in two upstairs bedrooms. They were also handcuffed and placed face down on the living room floor. Kenneth Blount's two children were left sleeping in a first floor bedroom. Defendant Sergeant Larry D. Watts (Watts) arrived after the SWAT team secured the house. It is undisputed that the Denver police department has a policy of detaining in a central location and handcuffing all persons found inside a residence during execution of a search warrant.

During the search, the police discovered the name of the undercover officer written on a note pad by the telephone. They also discovered a "sexual dungeon" in the basement containing unusual sexual devices, pornographic photos, and video equipment. This information was radioed to Rathburn, who decided to arrest plaintiffs and take them downtown for further questioning. Rathburn did not know the identity of plaintiffs when he ordered them arrested and their names had never surfaced before during the course of his investigation. After questioning, all three plaintiffs were released. Plaintiffs were never charged with any criminal offense.

During the search, Kenneth Blount asked to check on his children. His request was denied. There is a factual dispute as to what happened next. Plaintiffs testified in their depositions that Kenneth Blount attempted to roll over on his side to breathe more easily. Defendants contend that Blount was attempting to stand up. Plaintiffs contend that one of the officers kicked him and two others knelt on his back. Defendants admit that Blount was "hog-tied." At this time, there were ten SWAT officers and two vice detectives present in the house.

James Renalde lived at the Grant Street residence with his then wife Rita Renalde. Renee and Kenneth Blount are sister and brother to Rita Renalde. At the time of the search, Renee Blount was living in the house temporarily. Kenneth Blount was there only to drop off his two children for babysitting while he went on a snowmobile trip early the next morning. Rita Renalde later plead guilty to an unknown charge.

In this action, plaintiffs claim under 42 U.S.C. § 1983 against the City and County of Denver (the City of Denver) and the Denver Police Department alleging that: (1) the City has a policy of detaining and handcuffing all persons found in a premises during execution of a search warrant; (2) the City has a policy of arresting all persons found during the execution of a search warrant regardless of probable cause; and (3) the City was deliberately indifferent in failing to train its officers otherwise. Plaintiffs claim against Rathburn for arrest without probable cause, against Watts for his participation in the handcuffing and for arrest without probable cause, against Organ for allowing the use of excessive force during plaintiffs' detention, and against all three individuals for acting in concert. Plaintiffs also bring pendent Colorado state law claims against all defendants for outrageous conduct and false arrest.

■ Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party has the burden of showing triable issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate when the court can conclude that no reasonable juror could find for the non-moving party on the basis of the evidence presented in the motion and response. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In reviewing a summary judgment motion,

courts must view the evidence in the light most favorable to the non-moving party and all doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir.1991).

**I.**

■ Defendants first move to dismiss plaintiffs' § 1983 claim against the City for its admitted policy of detaining and handcuffing all occupants of a searched premises regardless of probable cause. As a matter of law, defendants argue that such policy is objectively reasonable under the Fourth Amendment. I disagree.

The Fourth Amendment protects against unreasonable searches and seizures. "The central inquiry of the Fourth Amendment is the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878–79, 20 L.Ed.2d 889 (1968). As a general rule, a seizure is presumptively unreasonable if it is not supported by probable cause. *Michigan v. Summers*, 452 U.S. 692, 700, 101 S.Ct. 2587, 2593, 69 L.Ed.2d 340 (1981). However, the Court has upheld limited intrusions short of formal, custodial arrests after balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983). *See also, Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989).

In *Summers*, after engaging in this balancing test, the Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Summers*, 452 U.S. at 705, 101 S.Ct. at 2595. The Court found that such a "routine detention" was "constitutionally reasonable." *Id.* However, the Court recognized that a prolonged detention or "special circumstances" might lead to a differ-

ent conclusion. *Id.* at 706, n. 21, 101 S.Ct. at 2595, n. 21. As to the nature and quality of the intrusion, the *Summers* court reasoned that: (1) detention adds minimally to the intrusion of the search itself; (2) the police would not be likely to exploit or unduly prolong the detention; and, (3) a detention at home adds minimally to the public stigma of the search. *Id.* at 702–03, 101 S.Ct. at 2594. As to the governmental justification, the Court considered: (1) preventing flight should incriminating evidence be found; (2) minimizing the risk of harm to officers; and, (3) facilitating an orderly search. *Id.*

*Summers* is limited to its facts and does not compel the result sought here by defendants as a matter of law. The intrusion in this case is qualitatively different. Plaintiffs were not merely "detained." They were handcuffed behind their backs and made to lie face down on the floor for a prolonged period of time. Moreover, after the initial sweep of the residence, which found no weapons, the justification for this kind of intrusive seizure dissipated. With 12 officers on the scene, the police could have satisfied their legitimate interests, for example, by allowing plaintiffs to sit on a couch in the living room under armed guard. Plaintiffs' police operations expert testified in his affidavit that the City's policy is "an egregious use of force and is in violation of currently accepted standards of police procedure and conduct."

Therefore, I conclude that a reasonable juror could find under these circumstances that the City's policy was objectively unreasonable, thus violating the Fourth Amendment. This is a disputed issue of material fact precluding summary judgment on this claim.

## II.

Next, defendants argue that plaintiffs have no factual support for their claim that the City has a policy of arresting all persons found in searched premises regardless of probable cause. Although plaintiffs present no evidence that this is a formal policy of the Denver police department, they do come forward with some evidence that it is an accepted custom or practice.

Rathburn testified in his deposition that he would have arrested any adult found in the Grant Street residence the night of the search. Further, he testified that his standard procedure is to take to the police station for questioning all persons found in a searched premises. Rathburn stated that his supervisor knew of this procedure and never criticized it. Watts testified in his deposition that he would have the people in a searched house transported to headquarters and that this was the procedure he was taught. Defendants point to other, conflicting evidence and offer explanations for Rathburn's and Watts' testimony. However, when viewed in the light most favorable to the plaintiffs, a reasonable juror could find that the City has an automatic arrest policy or practice. Therefore, there is a dispute of material fact precluding summary judgment on this claim.

Defendants do not argue that plaintiffs' failure to train claim against the City should be dismissed. Therefore, this claim also survives summary judgment.

## III.

Rathburn asserts that he has qualified immunity on plaintiffs' claim that he ordered them arrested without probable cause. I agree.

A § 1983 defendant enjoys qualified immunity unless he violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 343, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986). Once a defendant asserts qualified immunity, a plaintiff must "come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred." *Pueblo Neighborhood Health Centers, Inc. v. Losavio,* 847 F.2d 642, 645–46 (10th Cir.1988).

A particularized showing is necessary: "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The burden then shifts to the defendant, as the movant for summary judgment, to show that there is no disputed material fact that would defeat the claim of qualified immunity. *Losavio*, 847 F.2d at 645–46.

■ It is clearly established that police officers may only arrest a person upon probable cause. In cases such as this one, qualified immunity shields police officers if "a reasonable officer could have believed [plaintiffs' arrest] to be lawful, in light of clearly established law and the information the officers possessed." *Anderson*, 483 U.S. at 641, 107 S.Ct. at 3040. "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Hunter v. Bryant*, —— U.S. ——, ——, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991). "[T]he court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed five years after the fact." *Id.*, —— U.S. at ——, 112 S.Ct. at 537.

■ Here, Rathburn made the decision that there was probable cause to arrest plaintiffs based on the following facts: (1) telephone calls to the prostitution ring were forwarded to the Grant Street residence; (2) somebody at that address wrote down the name of the undercover officer; and, (3) the presence of the sexual dungeon at that address. Plaintiffs assert that these facts do not establish probable cause because they are not particularized as to each person arrested. For example, Rathburn did not know who wrote down the name of the undercover officer or whether that person left the house before the search. Nor did Rathburn know that Kenneth Blount did not live at the Grant Street residence.

Even assuming that Rathburn's determination of probable cause is fatally flawed by this lack of particularity, I conclude that he acted reasonably based on the information he possessed. Given this albeit limited information, Rathburn had probable cause to suspect any adult found in the Grant Street residence on the night of the search. I will not second guess Rathburn's decision to arrest plaintiffs and deny him qualified immunity merely because plaintiffs can construct another reasonable interpretation of events based largely on information not available to Rathburn at that time. Moreover, plaintiffs cannot rely on state law to support their § 1983 claim. Therefore, summary judgment is granted as to the claim against Rathburn.

IV.

Next, Watts asserts that he has qualified immunity on plaintiffs' claims that he (1) allowed plaintiffs to be handcuffed and participated in the excessive force used against plaintiffs, and (2) participated in the decision to arrest. I disagree as to (1) but agree as to (2).

■ As to the first claim against Watts, it has been clearly established since 1989 that "Every person has the right not to be subjected to unreasonable or excessive force while being arrested or detained by a police officer." *Zuchel v. Spinharney*, 890 F.2d 273, 274 (10th Cir.1989). "[A]ll claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham*, 490 U.S. at 395, 109 S.Ct. at 1871.

Watts was not involved in the initial entry, nor was he in charge of the SWAT team which detained plaintiffs. Watts did not personally use any force against plaintiffs. Rather, his duties focused on executing the search warrant itself. In essence, he argues that his conduct did not proximately cause a deprivation of plaintiffs' constitutional rights. However, plaintiffs allege that Watts was the ranking member of the vice squad present at the Grant

Street residence and that he had the duty and responsibility of controlling and overseeing all aspects of the search. As such, a reasonable juror could find that Watts had actual knowledge of the nature of plaintiffs' detention and that he acquiesced in that detention. *See, Woodward v. City of Worland,* 977 F.2d 1392 (10th Cir.1992), (Supervisory liability under § 1983 requires allegations of personal direction or actual knowledge and acquiescence).

I conclude that plaintiffs have met their initial burden of showing a violation of clearly established law. Because there remains disputed factual questions whether plaintiffs' detention was reasonable and whether Watts himself is liable as a supervisor, Watts does not enjoy qualified immunity on this claim.

As to plaintiffs' second claim, Watts argues that he did not "participate" in Rathburn's decision to arrest the plaintiffs. Although the evidence is undisputed that Rathburn had overall charge of the investigation and that Rathburn radioed instructions to the officers at Grant Street to arrest plaintiffs. Watts made the actual, physical arrest. However, as I concluded above, Rathburn is entitled to qualified immunity on this claim because he reasonably believed he had probable cause to arrest plaintiffs. Likewise, Watts is entitled to qualified immunity on this same claim.

### V.

Organ claims he is entitled to qualified immunity on plaintiffs' claim that he allowed the use of unreasonable and excessive force in their detention. As set out above, this law was clearly established at the time of this alleged violation. Further, as set out above, the question whether plaintiffs' detention was reasonable under all the circumstances is a genuinely disputed issue of act. Moreover, as the leader of the SWAT team, Organ had dominant supervision over the conditions of plaintiffs' detention, thus raising an additional disputed issued of fact as to his knowledge and acquiescence. Therefore, plaintiffs have satisfied their initial burden of showing a violation of clearly established law and the

presence of disputed material issues of fact which precludes qualified immunity.

### VI.

Rathburn, Watts, and Organ claim qualified immunity on plaintiffs' claim that they acted in "joint concert" to violate plaintiffs' constitutional rights. Plaintiffs cite no authority recognizing a "joint concert" claim under § 1983, and I know of none. Indeed, such a theory would impose liability merely through association. This is not a cognizable claim under § 1983. *See, Woodward v. City of Worland, supra,* at 1398–1400 (Liability under § 1983 must be predicated upon a "deliberate" deprivation of constitutional rights by the defendant).

Plaintiffs cite cases holding that a police officer may be liable under § 1983 where he participates in an operation that causes a constitutional deprivation but does not himself cause the injury. *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553 (1st Cir.1989); *Melear v. Spears,* 862 F.2d 1177 (5th Cir.1989). However, these cases impose direct, personal liability where a defendant proximately causes the deprivation through his own participation or supervision. They do not create a "joint concert" cause of action. Therefore, this claim, even if cognizable, was not clearly established at the time of the alleged violation and Rathburn, Watts, and Organ are entitled to qualified immunity.

### VII.

Next, defendants move to dismiss plaintiffs' pendent state law tort claims under Colorado's Governmental Immunity Act, C.R.S. § 24–10–101, *et seq.* As to the claims against the City, the Act does not waive a public entity's sovereign immunity for claims relating to its police force. C.R.S. §§ 24–10–104 to 24–10–108. Plaintiffs' reliance on C.R.S. § 29–5–111 and *Antonopoulos v. Town of Telluride,* 187 Colo. 392, 532 P.2d 346, 349 (1975), is misplaced. That statute and case provide only that a public entity must indemnify their police officers once they are found liable on a claim. This authority does not waive

sovereign immunity and make the public entity liable in the first instance.

The individual defendants also challenge plaintiffs' state law claims for outrageous conduct and false arrest. First, they state: "For the reasons set forth above, these claims must also be dismissed." However, the only claims warranting dismissal are those dismissed under the doctrine of qualified immunity, which does not insulate defendants from liability on state law claims. Therefore, "the reasons set forth above" do not warrant dismissal of these pendent claims.

Second, the individual defendants argue that plaintiffs cannot show their actions were willful and wanton, a prerequisite to liability under the Governmental Immunity Act. C.R.S. § 24–10–118(2). However, intentional torts such as outrageous conduct and false arrest intrinsically raise triable questions whether a defendant's conduct was willful and wanton. *See generally, Patel v. Thomas*, 793 P.2d 632, 637 (Colo.App.1990). Therefore summary judgment is denied as to these claims.

Lastly, Organ contends that the pendent claims against him are barred because he was never named in any of plaintiffs' three notice of intent to sue letters. I agree. Such notice is a jurisdictional prerequisite to maintaining a state law action against him. C.R.S. §§ 24–10–109(1) and 118(1)(a). Therefore, plaintiffs' pendent claims against Organ are dismissed.

### VIII.

Lastly, defendants move to dismiss the Denver Police Department as a named party defendant. A police department is not a suable entity. *Boren v. City of Colorado Springs*, 624 F.Supp. 474, 479 (D.Colo.1985). Further, plaintiffs apparently do not contest this dismissal. Therefore, the Denver Police Department is dismissed as a party defendant.

Accordingly, IT IS ORDERED THAT defendants' motion for summary judgment is GRANTED in part and DENIED in part as follows:

(1) Plaintiffs' § 1983 claim against defendant Rathburn for arresting plaintiffs without probable cause is DISMISSED;

(2) Plaintiffs' § 1983 claim against defendant Watts for arresting plaintiffs without probable cause is DISMISSED;

(3) Plaintiffs' § 1983 claim against defendants Rathburn, Watts, and Organ for "joint concert" is DISMISSED;

(4) Plaintiffs' pendent state law claims against defendant Organ are DISMISSED;

(5) The Denver Police Department is DISMISSED as a party defendant; and,

(6) Defendants' motion is otherwise denied.