**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 22 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ASPEN ORTHOPAEDICS & SPORTS
MEDICINE, LLC, a Colorado limited
liability corporation; GARY BRAZINA,
M.D.;STEVEN NADLER, M.D.,

       Plaintiffs - Appellees,

    v.

ASPEN VALLEY HOSPITAL DISTRICT, a
Colorado corporation,

       Defendant - Appellant,

    and

ORTHOPEDIC ASSOCIATES OF ASPEN
AND GLENWOOD SPRINGS, P.C., a
Colorado professional corporation; JOHN
FREEMAN, M.D.,individually and as Chief
Executive Officer and owner and member of
Orthopedic Associates of Aspen and
Glenwood Springs, P.C.; ROBERT
HUNTER, M.D.; THOMAS PEVNY, M.D.;
MARK PURNELL, M.D., individually and
as owners and members of Orthopedic
Associates of Aspen and Glenwood Springs,
P.C.;ASPEN EMERGENCY MEDICINE,
P.C., a Colorado professional corporation;
JOHN "BUD" GLISSMAN, M.D.,
individually, as Chief Executive Officer, as
an owner and member of Aspen Emergency
Medicine, P.C. and as Director of the
Emergency Department at Aspen Valley

No. 02-1022

Hospital; J. STEVENS AYERS, D.O.;
MARION BERG, M.D.;CHRISTOPHER
MARINEZ, M.D., individually and as
owners and members of Aspen Emergency
Medicine, P.C.,

Defendants.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D. Ct. No. 99-S-1763)**

---

Katherine Taylor Eubank (Daniel M. Fowler, with her on the briefs), Fowler, Schimberg, & Flanagan, P.C., Denver, Colorado, appearing for Appellant.

Brian E. Bates, Antonio Bates Bernard Professional Corporation, Denver, Colorado (Sander N. Karp and Julie C. Berquist, Leavenworth & Karp, P.C., Denver, Colorado, and Thomas P. McMahon, Powers Phillips, P.C., Denver, Colorado, with him on the brief), appearing for Appellee.

---

Before **TACHA**, Chief Circuit Judge, **ANDERSON,** and **BRISCOE**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

---

Defendant-Appellant Aspen Valley Hospital District ("the Hospital") brings this interlocutory appeal of the district court's denial of its claim that the Colorado Governmental Immunity Act grants it immunity from suit. We consider two issues on appeal. First, do we have subject matter jurisdiction to hear interlocutory appeals from the denial of immunity from suit when state law

-2-

creates the immunity? Second, did the district court correctly hold that the Colorado Governmental Immunity Act does not provide the Hospital with immunity from suit? We hold that this Court has subject matter jurisdiction to hear the appeal and we REVERSE in part and REMAND in part, pursuant to the notice provisions of the Colorado Governmental Immunity Act.

## I. Background

This case comes to us from a motion to dismiss. The facts as stated in the Amended Complaint follow.[1] Doctors Brazina and Nadler relocated to the Aspen, Colorado area in 1996 to establish an orthopedic practice. At that time, only two emergency medical facilities existed in the Aspen area: the Hospital, which is a governmental entity of the State of Colorado, and the Snowmass Clinic, which is privately owned by Orthopedic Associates and Aspen Emergency Medicine, P.C. Orthopedic Associates, a defendant in the case below but not before us on appeal, was the sole provider of orthopedic services in Aspen prior to the Plaintiffs' arrival. Aspen Emergency Medicine, P.C., again a defendant in the case below but not before us on appeal, has an exclusive contract with the Hospital to run the Hospital's emergency room and to make patient referrals.

---

[1] Plaintiff-Appellees are Dr. Gary Brazina and Dr. Stephen Nadler, both orthopedic surgeons, and their company, Aspen Orthopaedics & Sports Medicine, LLC. We refer to all three Appellees as "the Plaintiffs," and to "Doctor Brazina," "Doctor Nadler" and "A.O.S.M." when we reference the Appellees individually.

Resistance emerged to the opening of the Plaintiffs' practice in the summer of 1996. For example, a member of Orthopedic Associates stated at that time that the Plaintiffs would "'starve' in the Aspen area and . . . 'never' get referrals from the Emergency Department . . . at the Hospital." In the fall of 1996, Doctors Brazina and Nadler sought staff privileges at the Hospital, which it only granted after an unduly extensive credentialing process.

After Doctors Brazina and Nadler obtained credentials, the Plaintiffs sought to obtain orthopedic referrals from the Snowmass Clinic and the Hospital. Because Orthopedic Associates partially owned the Snowmass Clinic, it refused to make referrals to the Plaintiffs. The Hospital's internal policy mandated that it refer patients to the orthopedic surgeon on-call. Nevertheless, the Aspen Emergency Medicine, P.C., doctors, who ran the Hospital's emergency room, referred all patients to Orthopedic Associates. On an unspecified date, A.O.S.M. registered a complaint with the Hospital regarding this failure to refer patients.

In the winter or early spring of 1997, the Hospital, using public funds, opened a new facility, the Midvalley Medical Center. The Plaintiffs attempted to rent space in this new facility, but the Hospital signed an exclusive lease with Orthopedics Associates and granted it management rights over the surgery center at the new facility. As manager of the Midvalley Medical Center, Orthopedics Associates refused to grant Doctor Nadler staff privileges. On April 29, 1997,

"A.O.S.M. presented the issue of its exclusion from the [Midvalley Medical Center] to the Board of [the Hospital]."

The Plaintiffs subsequently filed a twenty-one count complaint alleging violations of the Sherman Act, state antitrust laws, breach of contract, and tort claims. The district court acquired subject matter jurisdiction over the Sherman Act claims pursuant to 28 U.S.C. § 1337 and took supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

Of interest to this interlocutory appeal, the Plaintiffs brought three tort claims against the Hospital. Count XIII alleges that the Hospital was negligent in not enforcing its patient referral policy. Count XVI alleges the Hospital was negligent in subjecting Doctors Brazina and Nadler to an overly burdensome credentialing process. And Count XVIII alleges that the Hospital tortiously interfered with prospective business relationships between the Plaintiffs and orthopedic patients.[2]

The Hospital filed a motion to dismiss on several grounds, which was referred to a magistrate judge. At issue here, the Hospital argued that, with regard to the three tort claims, it was immune from suit pursuant to the Colorado Governmental Immunity Act ("CGIA"). *See* Colo. Rev. Stat. § 24-10-101 *et seq.*

---

[2] Presumably, Count XVIII references the Hospital's failure to lease space at the Midvalley Medical Center as well as its failure to refer patients from the emergency room of the Hospital, but this is unclear.

The magistrate judge recommended denial of the Hospital's motion because the CGIA waived immunity for the claims alleged by the Plaintiffs. Upon de novo review, the district court agreed with the magistrate judge's analysis and denied the Hospital's motion to dismiss. This interlocutory appeal followed.

## II. Discussion

### A. Standard Of Review

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quotation omitted). We accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the nonmoving party. *Id.* Since legal sufficiency is a question of law, we review the district court's disposition of a Rule 12(b)(6) motion de novo. *Id.*

### B. Subject Matter Jurisdiction Over Interlocutory Appeals Challenging The Denial Of State Law Created Immunity From Suit

We find that we have subject matter jurisdiction to hear the Hospital's appeal from the district court's denial of its state-law immunity from suit. This conclusion derives from a combination of the teachings of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and the collateral order doctrine. Thus, "while

state law governs the applicability of immunity to state law claims, federal law determines the appealability of the district court's order . . . ." *Sheth v. Webster*, 145 F.3d 1231, 1236 (11th Cir. 1998) (citations and internal quotations omitted). Every circuit to address this issue, either in pendent or diversity jurisdiction, applies the same analysis used in *Sheth*. *See, e.g.*, *Napolitano v. Flynn*, 949 F.2d 617, 621 (2nd Cir. 1991); *Brown v. Grabowski*, 922 F.2d 1097, 1106-07 (3rd Cir. 1990); *Gray-Hopkins v. Prince George's County, Maryland*, 309 F.3d 224, 231-32 (4th Cir. 2002); *Sorey v. Kellett*, 849 F.2d 960, 961-62 (5th Cir. 1988); *Marrical v. Detroit News, Inc.*, 805 F.2d 169, 172-74 (6th Cir. 1986). Although this Court has yet to adopt formally the reasoning employed in these cases, we have implicitly applied this analysis in our previous decisions. *See, e.g., Decker v. IHC Hosp., Inc.*, 982 F.2d 433, 435-37 (10th Cir. 1992) (applying this analysis to question of immunity under Utah law). We make our holding explicit in this case and adopt the reasoning of the other circuits.

Applying this analysis in the instant case is straightforward. Pursuant to the federal collateral order doctrine, we have subject matter jurisdiction to hear "appeals of orders denying motions to dismiss where the motions are based on immunity from suit." *Decker*, 982 F.2d at 435. State law governs the scope of the immunity at issue (*i.e.*, whether the immunity is 'immunity from suit' or merely 'immunity from liability'). *See Gray-Hopkin*s, 309 F.3d at 231 ("We must

look to substantive state law . . . in determining the nature and scope of a claimed immunity."). The CGIA, as applied to governmental entities such as the Hospital, offers immunity from suit. *Padilla v. School Dist. No. 1*, 25 P.3d 1176, 1180 (Colo. 2001) (en banc) (absent a statutory exception the "CGIA establishes immunity from suit for public entities"). Because the CGIA grants the Hospital immunity from suit, we have subject matter jurisdiction to hear this appeal pursuant to the federal collateral order doctrine.

The Plaintiffs' objections to this conclusion are unpersuasive. First, the Plaintiffs argue that hearing this interlocutory appeal would allow a Colorado statute to define this Court's subject matter jurisdiction. We disagree. As the *Erie* analysis above illustrates, federal, not state, law controls the appealability of the district court's order. *Sheth*, 145 F.3d at 1237 ("[F]ederal law determines the appealability of the district court's order denying summary judgment.") (internal quotations omitted). The question of appealability, not that of the substantive immunity law, controls our subject matter jurisdiction. *See Crumpacker v. Kansas*, 338 F.3d 1163, 1167 (10th Cir. 2003) ("While this court typically has jurisdiction only over final decisions of the district court, it may consider appeals of interlocutory orders falling within the collateral order doctrine.").

Next, the Plaintiffs argue that hearing this appeal would serve no purpose because their antitrust claims for injunctive relief remain viable below. We have

previously rejected this same argument. *DeVargas v. Mason & Hanger-Silas Mason Co., Inc.*, 844 F.2d 714, 718 (10th Cir. 1988) ("We therefore adopt the majority view and hold that a pending claim for injunctive relief does not bar our jurisdiction over an interlocutory appeal of a denial of a defense of qualified immunity to a damages claim."). The *DeVargas* court rejected this argument, in part, because adopting it would allow plaintiffs in every action to elude interlocutory review of the denial of immunity from suit simply by including claims for injunctive relief. *Id.* That rationale applies equally here.

Finally, the Plaintiffs argue that *Walton v. State*, 968 P.2d 636 (Colo. 1998), establishes that the Hospital may fully vindicate its immunity rights on appeal after a final order. Contrary to the Plaintiffs' suggestion, *Walton* stands only for the proposition that a public entity *may* waive its right to an interlocutory appeal—nothing more. *Id.* at 641 ("Significantly, the legislature provided that the trial court's CGIA ruling is 'subject to interlocutory appeal,' not that the right to file an interlocutory appeal must be exercised to preserve the CGIA issue in the case.") (citations omitted). The Colorado Supreme Court's failure to support the Plaintiffs' contention is not surprising, as immunity from suit is "an entitlement not to stand trial or face the other burdens of litigation[.]" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

C.      Compliance With The Notice Provisions Of The Colorado Governmental

        Immunity Act

The notice provisions of the CGIA apply when federal courts hear Colorado

tort claims under supplemental jurisdiction.[3]  *Renalde v. City & County of Denver,*

*Colo.*, 807 F. Supp. 668, 675 (D. Colo. 1992) (holding that Colorado tort claims

brought by private plaintiff under pendent jurisdiction are subject to the notice

provisions of the CGIA as a jurisdictional prerequisite to suit).  Although the

parties and the district court failed to address the issue, we consider sua sponte

whether the Plaintiffs complied with the CGIA notice provisions, codified at

Colo. Rev. Stat. section 24-10-109, and whether factual issues of compliance

remain outstanding.  *Brock v. Nyland*, 955 P.2d 1037, 1043 (Colo. 1998) (holding

that the court may raise failure to comply with the CGIA notice provisions sua

sponte).

1.      *The Provisions of Section 24-10-109(1)*

Sub-section one of the CGIA notice provision reads:

Any person claiming to have suffered an injury by a public entity . . . ,
whether or not by a willful and wanton act or omission, shall file a
written notice as provided in this section within one hundred eighty

_____

[3]In *King v. United States*, 301 F.3d 1270, 1277 (10th Cir. 2002), we held
that the CGIA notice provisions do not apply to federal common law claims
brought by the United States.  *King* is inapposite here for two reasons.  First, the
United States is not the plaintiff, or even a party.  Second, the Plaintiffs bring
state law tort claims, not federal common law claims.

days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury. Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.  Colo. Rev. Stat. § 24-10-109(1).

Accordingly, "[t]he CGIA[, section 24-10-109(1),] requires that anyone who has a claim against . . . [a state entity] must file a written notice of the claim within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury." *Gallagher v. Bd. of Trs. for Univ. of N. Colo.*, 54 P.3d 386, 390-91 (Colo. 2002) (internal quotations omitted).

The Colorado Supreme Court has determined that written notice is provided pursuant to Section 24-10-109(1) only when that written notice contains a demand for monetary damages.

"[W]e interpret the term 'written notice' in section 24-10-109(1) to mean written notice of a claim, we hold that any documents on which a plaintiff relies to satisfy the requirements of section 24-10-109(1) necessarily must assert a claim by including a request or demand that the defendant public entity or employee pay the plaintiff an award of monetary damages. . . . [Indeed,] *the request for payment of monetary damages is what shows that a document is a notice of a claim under section 24-10-109(1)*." *Mesa County Valley School Dist. No. 51 v. Kelsey*, 8 P.3d 1200, 1205 (Colo. 2000) (emphasis added).

Thus, if the Plaintiffs failed to submit a written demand for monetary damages within 180 days after they discovered, or should have discovered, their

-11-

injury, this omission operates as a jurisdictional bar to the lawsuit.[4]

Colorado courts strictly construe section 24-10-109(1) and consistently hold that "[c]omplying with the notice of claim [as set forth in section 24-10-109(1)] is a jurisdictional prerequisite to suit." *Gallagher*, 54 P.3d at 391; *see also Renalde*, 807 F. Supp. at 675 ("Such notice is a jurisdictional prerequisite to maintaining a state law action . . . ."). Furthermore, Colorado courts describe section 24-10-109(1) as a non-claim statute, "meaning that failure to comply with the 180-day period is an absolute bar to suit." *Gallagher*, 54 P.3d at 393 (citations omitted). Thus, section 24-10-109(1) is "not subject to equitable defenses such as waiver, tolling, or estoppel[;]" and plaintiffs cannot use the continuing violation doctrine to remedy an untimely filing of notice. *Id.* In addition, each plaintiff must give

---

[4]The Colorado Supreme Court has held that sections 24-10-109(3) and 24-10-109(6) are not jurisdictional requirements, but rather create affirmative defenses. *Brock v. Nyland*, 955 P.2d 1037 (Colo. 1998) (holding that section 24-10-109(3) is an affirmative defense); *Regional Trans. Dist. v. Lopez*, 916 P.2d 1187, 1193 (Colo. 1996) (holding that section 24-10-109(6) is an affirmative defense). In these cases, the Colorado Supreme Court also stated that only the provisions of section 24-10-109(1) are jurisdictional. *See, e.g., Brock*, 955 P.2d at 1043. We note, however, that the Colorado Supreme Court has never expressly held that section 24-10-109(2) is not jurisdictional. We also note that the Colorado Court of Appeals described the Colorado Supreme Court's statements in *Brock* and *Lopez,* that only section 24-10-109(1) raises a jurisdictional bar, as dicta. *Bresciani v. Hargan*, 968 P.2d 153, 156-58 (Colo. Ct. App. 1998) (holding that section 24-10-109(2) is jurisdictional when applied in conjunction with section 24-10-118(1)(a)). Although the provisions of section 24-10-109(2) seem applicable in this case, we limit our reliance to the indisputably jurisdictional provisions of section 24-10-109(1). *See Gallagher*, 54 P.3d at 391-93.

separate notice of her claim to the state entity. *DeForrest v. City of Cherry Hills Village*, 72 P.3d 384, 386-87 (Colo. Ct. App. 2002).

2.     *Pleading Compliance with Section 24-10-109(1)*

In addition to construing its terms strictly, Colorado courts consistently hold that a plaintiff must plead compliance with the CGIA's notice provisions in the complaint to avoid dismissal. *See Kratzer v. Colorado Intergovernmental Risk Share Agency*, 18 P.3d 766, 769 (Colo. Ct. App. 2000) ("[A] claimant must allege in his or her complaint that the claimant has complied with the jurisdictional prerequisite of filing of a notice of claim.") (citations omitted); *Deason v. Lewis*, 706 P.2d 1283, 1286 (Colo. Ct. App. 1985) ("plaintiff failed to plead compliance with the notice provision, and thus, his tort claims under the [C]GIA were insufficient"); *Jones v. Northeast Durango Water Dist.*, 622 P.2d 92, 94 (Colo. Ct. App. 1980) (holding that because plaintiff failed to plead compliance with the CGIA notice provisions "[t]hese claims were . . . subject to dismissal at any stage of the proceedings"); John W. Grund *et al.*, 7A *West's Colorado Practice Series, Personal Injury Practice--Torts and Insurance* § 28.24 (West Pub. 2000 & Supp. 2003) ("Because compliance with the notice requirement is jurisdictional, the plaintiff must allege compliance in the complaint, and lack of compliance may be raised at any time by the defendant or

the court.").[5]

In the context of a motion to dismiss, pleading compliance with the notice provisions of the CGIA is *de facto* jurisdictional. "The court's function on a Rule 12(b)(6) motion is not to weigh *potential* evidence that the parties might present at trial[.]" *Sutton*, 173 F.3d at 1236 (quotation omitted and emphasis added). Rather, the 'facts' in the case are limited to the well-pleaded allegations in the complaint. *See Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to . . . any other pleading outside the complaint itself . . . ."). When a plaintiff fails to plead compliance with the CGIA, and a court addresses the case in the context of a motion to dismiss, the court must accept as a matter of 'fact' that the plaintiff failed to comply with the notice provisions. This lack of compliance,

---

[5]Although the Colorado Supreme Court has not passed on this issue, the Colorado Court of Appeals has addressed it several times. "While not binding on this court, 'decisions by a state's intermediate appellate courts provide evidence of how the state's highest court would rule on the issue, and we can consider them as such.'" *Craven v. Univ. of Colo. Hosp. Auth.*, 260 F.3d 1218, 1231 (10th Cir. 2001) (quoting *Stauth v. Nat'l Union Fire Ins. Co.*, 236 F.3d 1260, 1267 (10th Cir. 2001)); *see also West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940) ("Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."). As we find no indicia that the Colorado Supreme Court would apply a contrary rule, we follow the Colorado Court of Appeals on the need to plead compliance with Colo. Rev. Stat. section 24-10-109.

then, is a jurisdictional issue.[6]

D.    The Sufficiency of the Amended Complaint

The Plaintiffs fail to allege compliance with the CGIA notice provisions. Generally, an allegation such as the following would suffice: 'Plaintiff fully complied with the provisions of Colo. Rev. Stat. section 24-10-109.'  Here, we are not presented with such a succinct allegation of compliance.  Instead, in an effort to give the Amended Complaint the most liberal reading, we forage through the Amended Complaint for allegations of compliance with section 24-10-109(1). *See Sutton*, 173 F.3d at 1236  .  Given this standard, in the Amended Complaint we find that the Plaintiffs pleaded that A.O.S.M. twice presented grievances to the Hospital.  First, paragraph 69 of the Amended Complaint alleges that "A.O.S.M.  . . . . challenged such [non-referral] practices as improper . . . bringing them to the attention . . . of the Hospital defendants."[7]  Second, paragraph 89 of the Amended

---

[6]*Cf. Gallagher*, 54 P.3d at 391 (compliance with CGIA notice requirement is a jurisdictional issue); Stephen A. Hess, 5A *West's Colorado Practice Series, Handbook On Civil Litigation* § 1180 (West Pub. 2000 & Supp. 2003) ("The rules concerning pleading and the litigation of claims from which the [state] government may be immune . . . begin with the simple rule that the plaintiff bears the burden of establishing subject matter jurisdiction under the governmental immunity statute.  Thus, the plaintiff must allege facts sufficient to vest the trial court with jurisdiction, and that includes averments that the claimant has complied with the jurisdictional prerequisite of filing of a [CGIA] notice of claim.") (citing *Sereff v. Waldman*, 30 P.3d 754 (Colo. Ct. App.2000) and *Kratzer*, 18 P.3d 766 (Colo. Ct. App. 2000)).

[7]The Plaintiffs fail to allege a specific date for this complaint to the
(continued...)

-15-

Complaint alleges that "on April 29, 1997, . . . A.O.S.M. presented the issue of its exclusion from the [Midvalley Medical Center] to the Board of [the Hospital], . . . but to no avail." We find these allegations insufficient.

1.    *Doctors Brazina and Nadler's Failure To Plead CGIA Compliance*

Although we read the Amended Complaint in the light most favorable to the Plaintiffs, the Plaintiffs fail to plead that all three Plaintiffs filed individual notices of claims against the Hospital. Here, the Amended Complaint only alleges that A.O.S.M., not Doctors Brazina and Nadler, filed complaints with the Hospital. Thus, Doctors Brazina and Nadler fail to allege that they filed a written notice with the Hospital demanding monetary damages within 180 days of discovery of, or when they should have discovered, their injuries as required by section 24-10-109(1). *See Gallagher*, 54 P.3d at 391; *Kelsey*, 8 P.3d at 1204-05.

Doctors Brazina and Nadler's role as the principals of A.O.S.M. has no bearing on this analysis. In *DeForrest*, the Colorado Court of Appeals faced a similar issue. In that case, the plaintiff sought to recover from a state entity for the wrongful death of his wife both in his individual capacity and as executor of his wife's estate. *Id.* at 386. The husband, however, only filed CGIA notice in his individual capacity. *Id.* at 387. The Colorado court barred the claim on

_____

[7](...continued)
Hospital.

-16-

behalf of the estate for failure to comply with the CGIA notice provisions, even though the executor of the wife's estate was also the plaintiff who properly filed CGIA notice in his individual capacity. *Id.* ("Here, only one notice of claim, by husband individually, was served on the governmental entities . . . . We conclude that any action by wife's estate for damages is barred for failure to give the requisite notice pursuant to the [C]GIA.").

The *DeForrest* decision compels a similar result here. Although Doctors Brazina and Nadler are identifiable with A.O.S.M., all three Plaintiffs are distinct legal entities who, pursuant to *DeForrest*, must have provided separate notices of their claims against the Hospital. *Id.*

Turning to the appropriate response to this failure to plead compliance, we find Doctors Brazina and Nadler's claims to be unlike those presented in *Gallagher*, 54 P.3d 386 (Colo. 2002), where the Colorado Supreme Court remanded the CGIA notice issue to the trial court for an evidentiary hearing. In *Gallagher* , a factual dispute existed as to whether the plaintiff filed timely notice. *Id*. at 389. Here, there is no factual dispute; rather, the Plaintiffs fail to plead that Doctors Brazina and Nadler complied with the CGIA notice provisions at all.

When faced with situations in which a plaintiff fails to plead compliance with the CGIA, Colorado courts have taken two courses of actions. First, if the plaintiff fails to plead compliance and cannot cure this defect, Colorado courts

dismiss the claims with prejudice. *See, e.g.*, *Jones*, 622 P.2d at 94. [8] If the plaintiff fails to plead compliance but later proves compliance at trial prior to the raising of an objection to the sufficiency of the compliant, Colorado courts, pursuant to Colo. R. Civ. P. 15(b), [9] treat the CGIA notice issues "as if they had been raised in the complaint." *Morgan v. Board of Water Works of Pueblo*, 837 P.2d 300, 302 (Colo. Ct. App. 1992).

Here, unlike in *Jones*, it is not clear from the record whether Doctors Brazina and Nadler can cure their deficient pleading by amendment. Also, unlike

---

[8]Although the Colorado Court of Appeals decided *Jones* and *Deason*, 706 P.2d 1283 (Colo. Ct. App. 1985), prior to the 1986 amendments to the CGIA, these cases remain good law. The 1986 amendments made only two changes to section 24-10-109(1): (a) rendering the subsection jurisdictional and (b) requiring strict, instead of substantial, compliance with its provisions. *See Gardner v. City and County of Denver*, 671 F. Supp. 713, 714 (D. Colo. 1987) ("In 1986 the section was re-enacted expressly creating a jurisdictional prerequisite to any action brought under the provisions of the article."); *Brock*, 955 P.2d at 1042 ("the 1986 amendments to section 24-10-109 . . . culminated in the addition of the jurisdictional prerequisite language to subsection 24-10-109(1)"); Colo. Sess. Laws, H.B. 1196, p. 877 § 9 (1986) (containing both the 1986 amendments and the pre-amended statute). Thus, if failure to plead compliance with section 24-10-109(1) provided pre-amendment grounds for dismissal, when the subsection was not jurisdictional and merely required substantial compliance, *Jones* and *Deason*'s interpretation remains sound under the stricter, amended subsection. Finally, although *Morgan*, 837 P.2d 300 (Colo. Ct. App. 1992), declined to follow *Jones* and *Deason*, as we explain, this holding was based on Colo. R. Civ. P. 15(b), which is not at issue in this appeal. *See also Kratzer*, 18 P.3d at 769 (citing *Jones* and *Deason* as good law).

[9]Colo. R. Civ. P. 15(b), which is identical to the federal rule, states: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."

*Morgan*, Doctors Brazina and Nadler have not proved compliance with the CGIA at trial. Given these circumstances, we find that a Colorado court would dismiss their claims without prejudice. If the Plaintiffs believe that they can cure their insufficient Amended Complaint, they can move for leave to file a second amended complaint and plead compliance with the CGIA notice provisions. *See* Fed. R. Civ. P. 15(a) ("[L]eave [to amend the complaint] shall be freely given when justice so requires."). Therefore, Doctors Brazina and Nadler's Counts XII, XVI and XVIII should be dismissed without prejudice.

2. *Factual Issue as to A.O.S.M.'s CGIA Compliance*

It is unclear from the face of the Amended Complaint whether A.O.S.M. in fact complied with section 24-10-109(1). Nevertheless, we read the Plaintiffs' Amended Complaint liberally. *See Sutton*, 173 F.3d at 1236. Given this standard, we find that a factual issue exists as to whether A.O.S.M. provided the Hospital with written notice demanding monetary damages within 180 days of discovering its alleged tort injuries.

A.O.S.M. alleges that it twice filed grievances with the Hospital. The first grievance presented to the Hospital, as alleged in paragraph 69 of the Amended Complaint, fails to include a date or even a rough time frame of when A.O.S.M. filed this protest. This allegation, then, provides no basis for determining when it gave notice and if the notice was timely. *Gallagher*, 54 P.3d at 391. Moreover,

A.O.S.M. does not allege that this first grievance, or the second, contained a demand for monetary damages. *See Kelsey*, 8 P.3d at 1204-05.

The Plaintiffs do include a date, April 29, 1997, for A.O.S.M.'s second grievance to the Hospital. Nevertheless, it is unclear, based merely upon the Amended Complaint, if the April 29, 1997, grievance was timely. In paragraphs 12, 54, and 55 of the Amended Complaint, the Plaintiffs allege that they first knew of their purported injuries in the summer of 1996. In paragraphs 56, 57, 63, and 76 of the Amended Complaint, however, the Plaintiffs allege that they first knew of their purported injuries in the fall of 1996 or late 1996. If the scope of A.O.S.M.'s injuries are limited to the failure to lease space at the Midvalley Medical Center or injuries occurring in late 1996, this second grievance may well constitute timely notice. On the other hand, if the scope of A.O.S.M.'s injuries include those dating back to the summer or early fall of 1996, it may not be timely. The Amended Complaint itself does not resolve this issue.

This set of circumstances differs from those presented by Doctor Brazina and Nadler's claims. As to the Doctors' claims, the Amended Complaint contains no allegations that written notices were filed at all. Thus, there can be no factual issue as to whether a non-alleged notice contained a demand for monetary damages or timely filed. A.O.S.M.'s claims, on the other hand, do allege that written notice was filed. We find that these allegations of filed written notice

sufficiently raise a factual question as to whether these notices contained a monetary demand and were timely. Therefore, unlike the claims brought by Doctors Brazina and Nadler, Colorado law requires us to remand A.O.S.M.'s tort claims to the district court. *Gallagher*, 54 P.3d at 392 (factual issues of compliance with section 24-10-109(1) are for the trial court to determine on remand). On remand, the district court shall hold an evidentiary hearing to determine whether A.O.S.M. filed notice 180 days after it discovered, or should have discovered, its injuries and whether the notice contained a demand for monetary damages. *See Gallagher*, 54 P.3d at 392; *Kelsey*, 8 P.3d at 1204-05.

### III. Conclusion

For the forgoing reasons, we REVERSE with instructions for the district court to dismiss Counts XIII, XVI and XVIII of the Amended Complaint without prejudice, as they relate to Doctors Brazina and Nadler, and REMAND Counts XIII, XVI and XVIII, as they relate to A.O.S.M., for a factual determination of whether it gave timely notice that demanded monetary damages.

**No. 02-1022, <u>Aspen Orthopaedics v. Aspen Valley Hosp. Dist.</u>**

**BRISCOE, Circuit Judge, concurring and dissenting:**

I concur in Parts I, II(A), and II(B) of the majority opinion. I dissent, however, from Part II(C) of the majority opinion which dismisses sua sponte Drs. Brazina's and Nadler's three state law tort claims brought against the Hospital. My concerns are twofold. First, I do not agree that under Colorado law failure to *plead* compliance with the CGIA's notice requirements is a jurisdictional bar. Second, prior to dismissal for failure to comply with the CGIA's notice requirements, Colorado courts uniformly favor allowing a plaintiff the opportunity to establish that he has complied with the CGIA. In stark contrast, the rule adopted by the majority has the dual effect of mandating dismissal of claims on pleading technicalities and denying plaintiffs the opportunity to present evidence addressing whether they have complied with the CGIA.

I.

In Part II(A), the majority correctly holds that we have subject matter jurisdiction to hear the Hospital's interlocutory appeal.[1] I will expand somewhat on the analysis that supports that conclusion.

---

[1] The parties have filed jurisdictional briefs in response to our show cause order directing the parties to address (1) whether the district court's December 12, 2001, order denying the Hospital's motion to dismiss based on CGIA was a final appealable decision under 28 U.S.C. § 1291, or any recognized exception to the final judgment rule, and (2) whether a state statute, Colo. Rev. Stat. § 24-10-108, may define a federal appellate court's jurisdiction.

Plaintiffs contend this court lacks jurisdiction to hear the interlocutory appeal because the order from which the Hospital appeals is not a final decision under 28 U.S.C. § 1291, nor does it meet any statutory or common law exception to the final judgment rule. Resolution of this issue is complicated by the fact that the CGIA includes its own reference to "final judgments" in Colo. Rev. Stat. §§ 24-10-108 and 24-10-118(2.5), which provide that orders denying motions to dismiss complaints on sovereign immunity grounds are final judgments for purposes of taking interlocutory appeals.[2] See Walton v. Colorado, 968 P.2d 636, 640 (Colo. 1998) (explaining purpose of language is to facilitate interlocutory

_____

[2] Colo. Rev. Stat. § 24-10-108 states:

> Except as provided in sections 24-10-104 to 24-10-106, sovereign immunity shall be a bar to any action against a public entity for injury which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant. If a public entity raises the issue of sovereign immunity prior to or after the commencement of discovery, the court shall suspend discovery, except any discovery necessary to decide the issue of sovereign immunity, and shall decide such issue on motion. The court's decision on such motion shall be a final judgment and shall be subject to interlocutory appeal.

Similarly, Colo. Rev. Stat. § 24-10-118(2.5) states:

> If a public employee raises the issue of sovereign immunity prior to or after the commencement of discovery, the court shall suspend discovery; except that any discovery necessary to decide the issue of sovereign immunity shall be allowed to proceed, and the court shall decide such issue on motion. The court's decision on such motion shall be a final judgment and shall be subject to interlocutory appeal.

-2-

appeals involving issues of sovereign immunity). The state law and federal law which apply here provide different rules for determining whether this appeal can proceed. As a federal court sitting in diversity, the doctrine of <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938), dictates that state substantive law should apply, <u>Hanna v. Plumer</u>, 380 U.S. 460, 466-68 (1965), but that federal procedural rules will nevertheless control the analysis. This principle requires that federal law should determine whether the Hospital fulfilled the requirements of the collateral order doctrine, a common law exception to the final judgment rule.[3] See <u>Budinich v. Becton Dickinson & Co.</u>, 486 U.S. 196 (1988) (holding in a diversity case federal law determines appealability under collateral order doctrine); <u>see also</u> <u>Cohen v. Beneficial Indus. Loan Corp.</u>, 337 U.S. 541, 546-47 (1949) (recognizing "small class" of decisions are excepted from final judgment rule and establishing collateral order doctrine). In order to satisfy the collateral order doctrine, the Hospital must meet three requirements: (1) the order must conclusively determine the disputed question; (2) the order must resolve an important issue completely separate from the merits of the action; and (3) the order must be effectively unreviewable on appeal from a final judgment. See <u>Pindus v. Fleming Cos.</u>, 146

---

[3] It is clear the district court order is not a final decision as defined in § 1291. As plaintiffs also correctly note, the "District Court did not expressly certify its decision pursuant to either 28 U.S.C. § 1292(b) or Fed. R. Civ. P. 54(b)." Aple. Br. at 10. The Hospital does not contest this statement and does not assert jurisdiction under this statutory exception.

F.3d 1224, 1226 (10th Cir. 1998) (citing Coopers & Lybrand v. Livesay, 427 U.S. 463, 468 (1978)). Here, both sides agree that the first two requirements are met. Our focus is therefore on the third requirement.

This court has interpreted the third requirement to mean that "where rights will not be irretrievably lost in the absence of an immediate appeal, collateral review is not available." In re Magic Circle Energy Corp., 889 F.2d 950, 954 (10th Cir. 1989). Therefore, the Hospital will only succeed in availing itself of this court's jurisdiction if the district court order deprived it of a right "that is essentially destroyed if its vindication must be postponed until trial is completed." Lauro Lines S.R.L. v. Chasser, 490 U.S. 495, 499 (1989). To determine whether allowing an interlocutory appeal will irreparably deprive the Hospital of a right, this court must ascertain the precise contours of the Hospital's immunity under Colorado state law. See, e.g., Gray-Hopkins v. Prince George's County, 309 F.3d 224, 231 (4th Cir. 2002) (applying federal procedural law to determine whether collateral order doctrine is applicable to interlocutory appeal regarding immunity, but then referring to state law to ascertain scope of sovereign immunity under state law); In re City of Philadelphia Litig., 49 F.3d 945, 957 (3d Cir. 1995) (same); Sorey v. Kellett, 849 F.2d 960, 962 (5th Cir. 1988) (same); Marrical v. Detroit News, Inc., 805 F.2d 169, 172 (6th Cir. 1986) (same). As this court previously explained in Decker v. IHC Hosps., Inc., 982 F.2d 433, 435 (10th Cir.

1992), there is a determinative distinction in assessing, as a matter of federal procedural law, which sovereign immunity cases are ripe for interlocutory appeal under the third requirement of the collateral order doctrine. On the one hand, where "the basis of the motion to dismiss is not an immunity from suit . . . an order denying the motion is not immediately appealable." Id. In contrast, if the "essence of the claimed right is a right not to stand trial," an interlocutory appeal is appropriate. Id. at 436 (internal quotations omitted).[4]

Here, the Colorado General Assembly has explicitly created a right to be free from all suits and not merely immune from liability. See Colo. Rev. Stat. § 24-10-108. The Colorado General Assembly has therefore established sovereign immunity for public entities from all suits. Consequently, by applying these facts to the third requirement of the federal collateral order doctrine, it is clear that the substantive right under state law to be immune from suits will be "irretrievably lost in the absence of an immediate appeal." Magic Circle, 889 F.2d at 954.

## II.

I disagree, however, with the sua sponte dismissal of Drs. Brazina's and

---

[4] As the Hospital artfully contends, this distinction comports with the third requirement – an interlocutory appeal is only needed to protect a right insofar as that entitlement is the right to be free from all litigation; not allowing an interlocutory appeal in that instance will subject that party to litigation. But, if the right is simply to be free from liability, then proceeding to trial will not itself violate that right and requirement three will not be met.

Nadler's (the doctors) tort claims for failure to plead compliance with the CGIA's notice requirements.[5]

In accordance with this court's "independent duty to inquire into its jurisdiction over a dispute," Phelps v. Hamilton, 122 F.3d 1309, 1315-16 (10th Cir. 1997), we have examined the pleadings to determine whether the plaintiffs have complied with section 24-10-109(1) of the CGIA which bars a claimant from filing suit unless he previously has provided the defendant public entity with written notice of his claim. Relying on a trilogy of Colorado Court of Appeals decisions, the majority concludes that "Colorado courts consistently hold that a plaintiff must *plead* compliance with the CGIA's notice provisions in the complaint to avoid dismissal." Maj. Op. at 13 (emphasis added). See Kratzer v. Colorado Intergovernmental Risk Share Agency, 18 P.3d 766 (Colo. Ct. App. 2000); Deason v. Lewis, 706 P.2d 1283 (Colo. Ct. App. 1985); Jones v. Northeast Durango Water Dist., 622 P.2d 92 (Colo. Ct. App. 1980). The majority further states that pleading compliance with the CGIA is "de facto jurisdictional" when addressed by the court "[i]n the context of a motion to dismiss," Maj. Op. at 14,

_____

[5] I concur in the majority's ultimate holding as it relates to A.O.S.M. Although I do not conclude that Colorado requires a plaintiff to plead compliance with the CGIA as a jurisdictional prerequisite to suit, I do agree the correct outcome as regards A.O.S.M.'s claims in Counts VIII, XV, and XVIII is to remand for a factual determination addressing A.O.S.M.'s compliance with the CGIA.

-6-

and therefore examines only the complaint for an allegation of notice compliance. Finding that the doctors did not satisfy this heightened pleading requirement, the majority concludes Colorado law requires dismissal of their claims.

The procedural context of the case at bar differs significantly from Kratzer, Deason, and Jones.  In each of those cases, the defendant had filed a motion to dismiss before the trial court alleging the plaintiff had not filed a notice of claim prior to bringing suit as required by section 24-10-109.  In the present case, no motion to dismiss for failure to comply with the CGIA notice requirements has been filed, nor has there been any fact finding by the district court on this question.  Therefore, unlike Kratzer, Deason, and Jones, the doctors here have not had the opportunity to show compliance "[i]n the context of a motion to dismiss." Maj. Op. at 14.

The *fact* of compliance with the CGIA notice requirements, rather than the *pleading* of compliance was determinative in Kratzer, Deason, and Jones.  Any statement in those cases concerning a plaintiff's failure to plead compliance with the CGIA provisions was made *only after* determining the plaintiff had not provided notice based on the evidence presented to the trial court.  See Kratzer, 18 P.3d at 769 (finding "it is undisputed that no notice of claim was served on defendants"); Deason, 706 P.2d at 1286 ("Plaintiff admits that notice was not filed within 180 days of discovery of his cause of action."); Jones, 622 P.2d at 94

-7-

(noting "it is admitted that plaintiff did not file the required notice"). This conclusion is borne out by the ruling in Morgan v. Board of Water Works of Pueblo, 837 P.2d 300 (Colo. Ct. App. 1992), which affirmed the trial court's denial of a motion for judgment notwithstanding the verdict in which the Board asserted plaintiffs failed to plead and prove compliance with the notice provisions of the CGIA. The Colorado Court of Appeals concluded that although plaintiffs had failed to plead compliance, the record developed at trial established the plaintiffs' compliance. The court rejected the Board's argument that Deason or Jones required a different result. The court in Morgan stated where the underlying evidence shows compliance, it is improper "to treat plaintiffs' failure to plead such compliance as a jurisdictional bar." Id. at 302.[6]

Colorado courts have repeatedly held that because the inquiry into "[w]hether a claimant has satisfied the [jurisdictional] requirements of section 24-

---

[6] In distinguishing Morgan, the majority concludes it is not bound by the decision because the Colorado Court of Appeals applied Colo. R. Civ. P. 15(b) to reach its conclusion. Maj. Op. at 18 n.8. I am not persuaded by this distinction. First, as the majority notes, Colo. R. Civ. P. 15(b) has an identical federal counterpart which also states: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Fed. R. Civ. P. 15(b). To the extent the Colorado procedural rule decides this question of Colorado law, the fact that there is an identical federal rule should weigh heavily in favor of an identical outcome. Second, by relying on Colo. R. Civ. P. 15(b) in the context of deciding whether failure to plead CGIA compliance was jurisdictional, the Colorado Court of Appeals held that such failure was plainly not jurisdictional.

10-109(1) presents a mixed question of law and fact," Mesa County Valley Sch. Dist. No. 51 v. Kelsey, 8 P.3d 1200, 1204 (Colo. 2000), *it is the trial court's task* to analyze whether the CGIA notice requirements have been met. Further, only after that inquiry is complete and only after the court determines that the plaintiff did not comply with the CGIA are claims dismissed for failure to plead CGIA compliance.

The proper course here is to remand the case to the district court for an evidentiary hearing on whether Drs. Brazina and Nadler provided proper notice as required by section 24-10-109(1). See Gallagher v. Bd. of Tr., 54 P.3d 386, 388 (Colo. 2002) (remanding to trial court to "hold a pre-trial hearing to resolve fact questions" regarding notice compliance); see also Mesa Valley, 8 P.3d 1204 (noting "[w]hen determining whether a plaintiff has complied with the requirements of section 24-10-109(1), the relevant facts include but are not necessarily limited to the persons, dates, and documents associated with the plaintiff's's alleged injury and filing of written notice"). The majority states that a remand is improper because, although in Gallagher a factual dispute existed necessitating the remand, "Here, there is no factual dispute." Maj. Op. at 17.[7] However, the majority thereafter also notes that "*it is not clear from the record*

_____

[7] I would submit we do not know if there is a factual dispute in the present case because the question of notice compliance is being raised for the first time on appeal.

whether Doctors Brazina and Nadler can cure their deficient pleading." Id. at 18 (emphasis added). As these conflicting statements suggest, this court cannot determine on the record before us whether the doctors have complied with the notice requirements.

I would remand to the district court on Counts XIII, XVI, and XVIII as they relate to Drs. Brazina and Nadler for a factual determination of whether they gave timely notice as the CGIA requires.